JAMES H. FOUNTAIN, plaintiff in error, *vs.* YOUNG J. AN-
DERSON, guardian, defendant in error.

1. A witness is not incompetent on the score of interest unless it appears
   that he has some interest, either directly or indirectly, in the event of
   the suit.
2. Where insolvency is the fact to be proved, the recollection of the
   sheriff who made a search for property on which to levy a *fi. fa.*
   in his hands, is admissible and competent for that purpose, and his
   statements as to the *fi. fa.*, its amount and his return of it, are imma-
   terial circumstances, and do not afford the legality of the evidence as
   to the main fact.
3. In the defense to a suit by a guardian against an assignee, to recover
   effects of the ward assigned by the former guardian, parol evidence is
   inadmissible to prove the payment of a judgment against the former
   guardian and his securities, unless it should first be shown, by the
   record, that such judgment embraced the same subject matter.
4. Nor is it allowable to establish the same fact indirectly in the absence
   of the record of that suit and judgment.
5. Applications for continuance rest in the sound discretion of the Court
   below, and that discretion will not be disturbed unless flagrantly abused.
6. Guardians may assign or transfer notes taken by and payable to them
   as guardians, and the purchaser or assignee, who buys in good faith,
   acquires a good title thereto.   Courts will not disturb such assignment,
   unless it appear that it was a contrivance between the purchaser and
   guardian to fraudulently convert the fund, and in that event both are
   liable to account to the ward or other person injured thereby.
7. The liability of the assignee in such case is a primary one, and not
   secondary to that of the securities on the guardian's bond.

Bill in equity, in Wilkinson Superior Court, tried before
Judge IVERSON L. HARRIS, at April Term, 1862.

A statement of the facts of this case will be found in the
opinion of the Court, as pronounced by Mr. Justice LYON.

CUMMING, for plaintiff in error.

LAWSON, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

This was a bill in equity, filed by Young J. Anderson, as the guardian of James A. Wright, against James H. Fountain, charging that Fountain had purchased from one James Taylor, the former guardian of James A. Wright, a note, belonging to his ward, on James Ross and Lucinda H. Wright, for the penal sum of $1,227 68, due one day after its date of 21st January, 1856—that the note was payable to said Taylor, as said guardian or bearer, that said Taylor, at the time of said purchase, was on the eve of absconding from the county, and for the purpose of evading, among others, his liability for and on account of his said guardianship, and fraudulently converting the property of his said ward to his own use, sold said note to Fountain, at the nominal sum of $120, or some other small sum ; that said Fountain bought said note with the full knowledge that it was the property of the ward, and Taylor in its sale was fraudulently intending to convert it to his own use and intended to aid and abet him in so doing; that Fountain instituted suit and recovered judgment on the same.

The bill further charged, that subsequently, a negro woman, named Charity, had been sold at sheriff's sale, as the property of James Taylor, and was bid off and paid for by Fountain with Taylor's money, and that he subsequently sent said negro to Taylor.

The bill prayed an injunction as to the judgment recovered on the note, that the note should be delivered to complainant for collection; that Fountain should pay the principal and interest due on the same to complainant, and to all which was added a prayer for general relief.

Fountain, by his answer, admitted that he bought the note from Taylor, but denied that he knew that the note belonged to him as guardian ; that Taylor was about to run away, or that he sold the note for the purpose of fraudulently converting the same to his own use ; but that he made a calculation of what was due on the same of principal and interest, and deducted from the aggregate a little more, say from two to

ten dollars, than the interest. He did not know, but that the sale was for the benefit of the ward; had no reason to think or know otherwise. He admits that Charity was sold as the property of Taylor, and that he bought her, but denies any agency for Taylor; says that he sold her to Thomas C. Taylor, who sent her off from his house; denies any intention to assist Taylor to leave the county, or any knowledge of his intention to do so, and of any intention to defraud his ward; that he bought the note in a fair course of trade as he did from other people.

On the trial, complainant put in evidence the depositions of William C. Taylor, who testified that Charity was sold as the property of James Taylor, and was bought by defendant with James Taylor's money, and that the negro was afterwards conveyed to James Taylor; but whether by defendant or not, he does not know; James Taylor had left the county before the sale; was at the house of defendant on the day or the day before he left the county, does not recollect which. To this testimony defendant objected on the ground of irrelevancy. The Court overruled the objection and defendant excepted.

Complainant then introduced the depositions of Lucinda H. Wright, who testified that Fountain said, when he called on her for the money, that he had shaved the note; that the note was originally for $1,200 or $1,300, and was given by her and Ross, to Taylor, in settlement of what they had in their hands as administrators of John T. Wright.

Complainant offered in evidence the deposition of James Taylor, (the former guardian and payee of the note)—he testified that he traded to Fountain a note for about $1,200 on James Ross and Lucinda H. Wright, as administrators of John T. Wright, and when he traded it, the amount due on the note of principal and interest, was about $650, and he received between $400 and $500—$582 of the amount due on the note belonged to him as guardian of James A. Wright, the balance belonged to him individually. The note was given about the 12th or 13th of February, 1856, and due one day after its date. Nothing was said about in what capacity

the note was traded.   Witness did not communicate to Fountain that he was about to leave, and cannot say that he knew it.   Fountain did purchase for witness, and with his money, a negro woman named Charity.   Defendant is generally careful and particular in all his trades.   To the admissibility of this testimony defendant objected, on account of the interest of the witness.   The objection was overruled and defendant excepted.

Complainant introduced James Bloodworth, who testified that he was sheriff of Wilkinson county in 1856 ; that he had a *fieri facias* in his hands against James Taylor, for $1,500 or $1,600 ; that he failed to find property on which to levy it, and that he returned the same unsatisfied with the entry of *nulla bona* ; that he regarded Taylor as insolvent, at least as to what he had in the county; that Taylor, he supposed, carried off a good deal of property, and that he had some three negro fellows about Columbus, Georgia, which he tried to get hold of but failed to do so.   To this testimony going to the jury defendant objected, but the objection was overruled, and defendant excepted.   Here the complainant closed.

The defendant offered to prove by the sheriff that the securities of James Taylor, as guardian of James A. Wright, had paid off a judgment against them and said Taylor on the guardian's bond of said Taylor.   The Court refused to allow the proof, and defendant excepted.

The defendant then offered to prove by the securities on Taylor's guardian bond, that they had fully accounted and paid all liability to the complainant in this suit.   The Court refused to allow this proof, and defendant excepted.

The defendant then offered to prove by the sheriff, that the judgment or *fi. fa.* against said Taylor and his securities, so paid off, was in the possession of the complainant, who, it was admitted, was in the army, and that the defendant had just ascertained that said judgment was obtained in the county of Laurens, and that he could prove its payment, and on account of his inability then to obtain an exemplification of the same, and the absence of the complainant, he moved a

continuance of the cause. The Court rejected the evidence and refused to allow a continuance, and defendant excepted.

Counsel for defendant requested the Court to charge, that it is necessary for the complainant to show a *devastavit*, or loss absolutely accruing to the complainant or his ward, before he can recover. That Taylor, (the former guardian,) was bound by his bond and his securities to the ward, all of whom complainant must show to be insolvent before he can go on an innocent purchaser of a note payable to bearer.

The Court below refused to give either of the requests in his charge, but charged the jury that "it has been decided by the Supreme Court of Georgia, that an attorney-at-law could not convey a good title to a purchaser for a valuable consideration of a note, whether not due or past due, which had been placed in his hands for collection. I apprehend that this decision was placed upon the ground that he was a trustee. Yet the attorney is the 'bearer of the note,' if the note contains that word of negotiability. The attorney may collect or receive the proceeds from the maker, but this power gives him no right to sell or trade off the note held in trust. This principle appears to me applicable to all trustees. The question for you to decide is, was Taylor the owner of the note he sold to Fountain? The copy note exhibited is made payable to bearer, but it is also made payable to James Taylor as guardian. The note is evidence of a debt, but to whom and for what? As it is payable to Taylor as guardian, you may presume that it was the property of the ward, and given for the purchase of some property of the ward's, sold by Taylor as guardian. If thus given, it was not Taylor's individual property, and he had no ownership in it until he had paid or accounted with his ward for it. A decision that Taylor could trade one note which he held as trustee, will decide that he may trade all. The consequence of such decision is to throw all redress upon his guardian's bond. I cannot so decide. I charge you, that in law a guardian is a trustee, and that notes payable to him as guardian carry on their face evidence of the trust, and that a purchaser of such a paper must inquire into the actual ownership of such note,

especially if it is offered to him, being past due, at less than par, or what it calls for, before a Court will protect him as a purchaser for a valuable consideration without notice. It is for you to apply the legal principle given you in charge to the testimony in the case, in making up your verdict." To the refusal of the Court to charge as requested, and to the charge as given, defendant excepted.

The jury decreed, that the defendant, Fountain, should forthwith deliver up and assign to complainant the judgment obtained on James Ross and Lucinda H. Wright, on the note referred to in the bill, and that the defendant pay costs.

The first error complained of is the admission of the testimony of William C. Taylor, proving the purchase by the defendant of a negro woman with the money of James Taylor. This objection, if it be one, was cured by the subsequent instruction of the Court to the jury, as certified in the record, that the same was irrelevant and should be disregarded by them.

1. The next objection is to the testimony of James Taylor, the former guardian. The objection as made is, that Taylor was an incompetent witness on the score of interest. We do not think the objection a good one. It does not appear to us in what way or how the witness can gain or lose by this this suit. The judgment in it could not be used for or against him in any other proceeding. He does not appear to be interested either directly or indirectly, and these are the tests for determining the interest that excludes a witness. 1 Greenleaf on Evidence, section 390; Adams vs. Burnett, 3 Kelly, 280.

2. Another objection is, to the admission of the testimony of the sheriff, Bloodworth, that he had a *fi. fa.* in his hands against Taylor in 1856, as sheriff, for $1,500 or $1,600, and that he searched for property on which to levy the same, but could find none, and that he returned the same with an entry of *nulla bona*; that he considered Taylor insolvent, etc. The objection urged against this evidence is, that the *fi. fa.* with its entries, is better evidence of itself, its amount and the returns on it, than the recollection of the sheriff. It is true

that the paper itself would better show what it was, who it was against, what it was for and what entries were upon it ; but these were matters not in dispute, and immaterial to the issue.   The object of the testimony was to show the insolvency of Taylor, and that he had no property in the county for the satisfaction of his debts, and these were facts that could be shown as well, perhaps better, by the sheriff who made the search, as by the execution and the entries on it ; for this reason we think there was no error in this ruling.

3. There was no error in the refusal of the Court to allow the defendant to prove by the sheriff that the securities of James Taylor, as guardian of James A. Wright, had paid off a judgment against them and Taylor on the guardian's bond ; and for the reason assigned by the Court below, that the fact of there being such a judgment, and the connection of said judgment with this cause could only be shown by an authenticated copy of the record of that cause. ᐟ The mere proof of payment of a judgment, which could have been done by any disinterested witness, could not have profited the defendant, in fact it would have been irrelevant, unless it also appeared that such judgment was upon the same cause of action.

4. Neither was there any error in the refusal of the Court to allow the defendant to prove, by the securities on Taylor's guardian bond, that they had fully accounted and paid to the complainant, all liabilities to the complainant in this suit ; because it was an attempt to get before the jury, indirectly, what the Court had just very properly refused, and it was impossible to make this proof without going into the subject matter of the suit in Laurens, in which the judgment was had that they had paid off.

5. The testimony offered, that the judgment or *fi. fa.* so paid off, that is, the one against Taylor and his securities, was in the possession of the complainant, who was absent in the army, and that defendant had just ascertained that said judgment was obtained in the county of Laurens, was intended to support the motion for a continuance, to enable the defendant to obtain an exemplification of the record of the judgment against Taylor and his securities, to be used as evi-

dence on a subsequent trial.   All applications for continu-
ance are addressed to the sound discretion of the Court below,
and with that discretion this Court will not interfere, unless
it has been flagrantly abused.   We cannot see but that it was
properly exercised in this case.   The applicant did not show
that he did not know, long before the trial, that there *was*
such a judgment or record, as the one desired to be used as
evidence, or that he had made the slightest effort to obtain it
before the trial.   No diligence was shown to have been used
to prepare this defence, and we think that the motion ought
to have been, as it was, refused.

The next question made in the record is upon the refusal
of the Court to charge the jury as requested by counsel for
the defendant; but as the question made upon the charge
given constitutes the main and controlling question in the
case, and as much of what will be said upon the one applies
to the other, we give the charge the precedence.

The Court charged the jury in effect, that a guardian, ex-
ecutor, administrator, or other trustee of like character, could
not assign to a purchaser, for value or otherwise, a promissory
note belonging to the trust which he represented, and if the
note assigned to the defendant by the former guardian, was
a paper of that description, which was not denied, the com-
plainant was entitled to recover.   We hold that this charge
was erroneous.

6. The legal title to promissory notes and other evidences
of debt, taken by a guardian, executor or administrator, for
their power, duties and trust, in this respect, are the same,
Field v. Scheffelin, 7 Johns., chapter 150, is in such guardian,
administrator or executor, and he has the right to collect or
sell and transfer the same, passing the legal title thereof to
the transferee, and he who purchases such a note from such
guardian, etc., in good faith, with no intention to commit a
fraud, or knowledge that one was intended on the ward, gets
an absolutely good title to the paper, although he may know
that the note belonged to the guardian as a part of the estate
of his ward, nor is he liable to account to the ward or any
one else for the amount of the note so purchased, or the loss

accruing to the ward or others by reason of such assignment. This power is lodged in the guardian, as well as in executors and administrators, for two reasons : first, for the benefit and security of the ward, and secondly, for his own security and protection against loss. Every guardian, administrator or executor is *prima facie* liable to his ward or to the estate represented for all notes taken by him in the discharge of the duties of his office, such as notes taken for property sold, rented or hired, money lent, or for balances due by former administrators, executors or guardian. He is liable for the solvency of all such notes. He takes them in lieu of money, and as an investment, and he must see to it at his peril that the notes he takes are good and solvent, and if they should not be, he must make them so. From this liability he can only be relieved by the clearest and most satisfactory showing to a Court of Equity, that the makers of the notes were unquestionably and abundantly solvent for the amount when the notes were made, and that they have since become insolvent under circumstances that could not reasonably have been anticipated at the time, and so suddenly that no time was allowed him to prevent the loss. In other words, that while he used in taking the note all necessary precaution, it was not subsequently lost by any neglect, want of attention, or mismanagement on his part.

This is his liability, and a wise and necessary one for the protection and security of the trust. Notwithstanding his liability is of this stringent character, he is obliged to keep the money belonging to his trust actively employed—it must be always invested. Besides this, he must clothe, educate and maintain his ward in a manner suitable to his circumstances and condition in life, pay all debts contracted for that purpose, and frequently it is necessary and to the interest of his ward to change the character of his investment, etc. Now if the law did not permit him to negotiate or transfer the notes, either for the benefit of the ward or to protect himself from possible or probable loss, from an anticipated insolvency of the obligors of the notes before he could secure or collect the liability, would be so unjust and harsh to the

guardian or other trustee of like character, as to deter the most acceptable persons from accepting these important offices, and would operate in many cases detrimental to the best interests of the ward. Take for example the note which forms the subject of this suit. It was given to the former guardian, in payment of the balance due by the makers, as administrators of John T. Wright, deceased, and was perhaps a part of the distributive share of the ward in that estate.

It was the duty of the guardian to have received money instead of the note, but if he had no immediate use for the money for the benefit of the ward, and the makers were perfectly solvent, it was better to take the note, as it was an immediate and active investment, but if subsequently the guardian needed the money to relieve the necessities of the ward, or to make a more profitable investment for him, and he could not collect it until the necessity or opportunity for investment had passed, then it was proper for him to negotiate the note, and get the money in that way for these purposes; or again, if the guardian foresaw that the makers would prove insolvent, if a collection by suit was attempted, it would be all important that he should have the power to dispose of the note to protect himself from a probable loss, or his ward from a certain one. Hence it is, that this class of trustees have the power to sell and assign promissory notes payable and belonging to them as guardians, etc. But although they possess this power, and may exercise it at their discretion, nevertheless such securities. belong to the trust, and to which the ward or *cestuis que trust* have the equitable title, and if they are fraudulently diverted from their legitimate purposes, by the guardian or other person, then they may be followed into the hands of the fraudulent assignee and recovered. The purchaser is not obliged to inquire into the motives that induce the guardian to sell, and if he buys in good faith, with no intention to commit a fraud on the trust, or knowledge that one is intended, he gets a good title, although the guardian, or other like trustee, intends by the assignment to convert the security to his own use in fraud of the rights of those interested in the trust. So important

have the Courts considered the free and unqualified exercise of this power or right by executors, administrators and guardians, for the benefit of their trust, that I cannot find in the books a single case where such assignment has been disturbed, unless there was some contrivance between the trustee and purchaser to divert the fund from its legitimate objects, in all such cases it is now well settled that the assignee shall be bound to make the *devastavit* good. In the earlier cases the rule was carried much further, for in several of them the assignment was held to be good, although made to secure a personal debt of the executor. Nugent vs. Gifford, 2 Ves. Sr., 269 ; Mead vs. Owens, 3 Atkins, 237 ; Whale vs. Boothe, 4 Tenn. Rep., 625. But it is now ruled that an assignment to pay or receive the personal debt of the executor is a *devastavit* or conversion, for which the assignee shall be bound. Hill vs. Sampson, 7 Ves., 152 ; Hawkins vs. Taylor, 8 Ves., 209 ; McLeod vs. Drummond, 14 Ves., 353 ; S. C., 17 Ves., 152 ; Watkins vs. Cheek, 25 Sands, 199 ; Keane vs. Robert, 4 Madd., 332 ; Field vs. Scheffelin, 7 John. Ch., 150. The last case is directly in point, and is the only one of an assignment by a guardian that I can find. The other cases cited are in respect to assignments of securities and other *assets* by an executor, but the same principle, as well as the reasons and necessity for its existence, which enable the executor to exercise this power over the *assets*, give to the guardian like power and control over notes and other securities belonging to the ward, *which have been taken or created by such guardian in the discharge of the duties of his office.* The only ground upon which these assignments will be disturbed by the Court is, that they are fraudulently made, that is, that the transfer was a contrivance by the guardian, to which the purchaser is a party, to convert the security, and whenever this is the case, the purchaser is liable. It was upon this idea that the bill was filed, and *that* was the case complainant endeavored to make by his proof, and the one that defendant was resisting, but the Court cut short the whole inquiry by charging that no assignment of such a paper by the guardian could be made.

Fountain *vs.* Anderson.

7. The Court properly refused to give the request of defendant's counsel in charge, because there was no liability on the part of the defendant for the amount of the note, unless he was a party to its fraudulent conversion, and in that case his liability is a primary one, he would be liable as much to the securities on the guardian's bond, if they had suffered by the transaction, as to the ward.

Let the judgment be reversed.