WILLIAM RENSHAW, JR., Respondent, *v.* MARTHA A. WILLS, Appellant.

1. *Equity—Trust—Note—Description of Payee.*—Where the payee holds a note or instrument in fiduciary capacity, and the purchaser. or endorsee has notice of the fact, and also that the trustee is committing a breach of faith, the purchaser will not be protected.
2. *Trust—Notice—Equity.*—Where a note executed by the purchaser at a partition sale to " J. S., sheriff," was secured by a deed of trust upon the property sold, if the deed of trust show the consideration of the note, and the endorsee of the sheriff purchasing the note received also the deed of trust which showed the consideration for the note, or knew of the deed when he purchased the note, he will be held to have notice of the fiduciary character of the sheriff, and will not be considered as a holder in good faith. The sheriff in taking the note is a trustee executing a trust devolved upon him by law.

*Appeal from St. Louis Court of Common Pleas.*

*Sharp & Broadhead*, for appellant.

I. That the sheriff is trustee of this fund; that he held the note taken for the purchase money of the land, subject to the order of the court; that having been ordered to take a note for the deferred. payment, he has no other authority than to collect the money and pay it over, under the order of the court: he could not sell the note.

II. That if the plaintiff discounted the note with a know ledge of the fact that the sheriff held it in the capacity of trustee, he becomes a party to the illegal act of the sheriff, and acquires no title to the note.

*First*—The sheriff was not the owner of the note; he was acting in a public capacity, selling the land belonging to other parties—R. C. 1855, p. 1116, § 35. By this section of the partition law, the sheriff is required to take notes or bonds

for the purchase money, collect and pay over the same according to the order of the court, &c. And by sec. 37, if the sale is made and the business not completed, he may collect and pay over the money, and make the deed in the same manner as if he continued to be sheriff, unless the court shall by order direct the business to be transferred to the next sheriff; showing that the court has control of the whole matter in the hands of the sheriff—Ranney v. Brooks, 20 Mo. 106.

*Second*—The plaintiff saw that the note was given to Castello as sheriff, and that he endorsed it as sheriff, and also in his individual capacity as James Castello. This was conclusive evidence that the note was given to and held by Castello as sheriff. The sheriff, as such, has no authority to sell a note; this the purchaser must have known.

If the transferee of a bill knows that the transferer has no right to pass the bill, he can acquire no property in it. If plaintiff endorsed bills to A. B. or order, for account of plaintiff, and A. B. pledged the bills with defendant for his private debt; held, that defendant took them with notice that they did not belong to A. B.—Byl. Bills, 122; 9 Paige, 57–60. This principle seems to be well settled. But the plaintiff relies doubtless upon the decision of this court in the case of Powell v. Morrison, 35 Mo. 244.

It is proved plainly that Castello was an officer of the law, and that the note was given to him as such.

The suit of Powell v. Morrison was a suit to recover back money already paid; this is a defence made by one of the distributees against a suit brought for the recovery of money, a part of which, at least, and perhaps the whole, belongs to her.

This may be a hard case on the plaintiff, who has paid his money for the note; but it would be equally hard on the defendant should she lose it, when she has been guilty of no negligence. In the case of Hertell v. Bogert, 9 Paige, 60, the court, in a similar case, says, that " where one of two innocent parties must suffer by the wrongful act of a third party, the one who, by his negligence, has enabled such third party

to .do the injury, must himself bear the loss occasioned thereby." Here, as in that case, the plaintiff must have known that the sheriff had no power to sell; he enabled the sheriff to commit a breach of trust and a violation of the law, and he must suffer the consequences of his own negligence.

*Krum, Decker & Krum,* for respondent.

I. The court below properly refused the instruction asked by the defendant.

*a.* The sheriff was the legal holder of the note in question, and had an indisputable right to transfer or assign it by endorsement and delivery. The word "sheriff," on the face and back of the note, was merely *descriptio personæ.* It did not limit the property of the sheriff, and conveyed no notice to the plaintiff of equities in favor of third persons—Freeman et al. v. Camden et al., 7 Mo. 298; Bryant v. Durkee, 9 Mo. 169; Jeffries v. McLean's Exec'r, 12 Mo. 538; Thornton v. Rankin, 19 Mo. 193; Trumbull v. Freret, 5 Martin, La., N. S., 703; Powell v. Morrison et al., 35 Mo. 244.

*b.* There was no notice of equities attached to the note brought home to the plaintiff, so as to have put him upon inquiry. He obtained the note through a broker, in the usual course of business. The deed of trust was not transferred to him until after he had purchased the note. The purchase was in good faith and for value—Goodman v. Simonds, 20 How. 343, 367–8.

*c.* Even if the plaintiff knew that the note in question was given in part payment for land sold in partition in which defendant was interested, this fact alone cannot prevent his recovery. He did not know to what use the proceeds of the note would be appropriated by. Castello. His knowledge of Castello's position as trustee did not of itself amount to notice of equities attached to the note. He could only be affected by equities attached to the instrument of which he had notice at the time of the assignment—Gullett v. Hay et al., 15 Mo. 399; Powell v. Morrison et al., 35 Mo. 244.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff instituted suit against defendant on a negotiable promissory note made by defendant, payable to the order of James Castello, sheriff, for the sum of eighteen hundred and fifty-six dollars twenty-five cents, due two years after date, and endorsed by Castello before maturity to plaintiff.

The defendant in her answer alleged, that, in a certain proceeding in partition, wherein she was one of the parties, by the decree of the court, the said James Castello, then sheriff of St. Louis county, was ordered, adjudged and required to sell the real estate in the partition suit mentioned and described, according to law, and upon the following terms, to-wit: one third of the purchase money to be paid in cash, one third in one year, and one third in two years from the date of said sale; the deferred payments to bear interest at the rate of six per cent. per annum, and to be secured by notes and deed of trust on the property. That, in pursuance of said order of sale, the said Castello, as sheriff, proceeded to sell the property on the terms required by the order, and took notes from the purchasers secured by deeds of trust on the property for the deferred payments. That a part of the real estate so sold was purchased by the defendant, and for the deferred payments she executed her notes to the said James Castello as sheriff, and gave her deed of trust on the property to secure the payment of the same; that the note for the last payment is the same note sued on this case; and that when Castello assigned and delivered the note to the plaintiff, he delivered also the trust deed; and that when said note and deed of trust were so assigned and delivered to plaintiff, the plaintiff had full knowledge of the fact that the note was gived to Castello as sheriff, and that the said note was given for the purchase money, in part, of the tract of land sold in partition under the order of court. Defendant further averred, that Castello had never accounted as sheriff for the proceeds of the note, if any, he received from the plaintiff; that his term of office had expired, and that he was

insolvent; that the plaintiff obtained the note in fraud of the rights of the distributees in the partition suit, of whom defendant was one, and, by collusion with Castello, with intent to defraud the distributees out of their rights to the said purchase money. The answer then asked that the other distributees might be made parties, so that there could be a full and final adjustment of all the matters in controversy.

It appears from the evidence that Castello, while still sheriff of St. Louis county, and before the note became due, endorsed the same and delivered it, together with the deed of trust, to one of his deputies, requesting him to place it in the hands of a street broker to sell. The deputy placed the note and deed of trust in the hands of one Hunt for that purpose. Hunt testified that the deputy sheriff under Castello placed in his hands the note sued on and the deed of trust made to secure it; that he was a note broker, and the note was placed in his hands for sale; that he showed plaintiff the note; that the endorsements "James Castello, sheriff," and "James Castello," were both on the note at the time he offered it to plaintiff for sale; that plaintiff bought the note, and he paid the money over to Castello; that he never left the deed of trust with plaintiff until after he got the money for the note from him; plaintiff said the maker of the note was good.

Castello's insolvency was then proved, and the proceedings and decree of the court in the matter of the partition were then given in evidence, as also the deed of trust; whereupon the defendant asked the following declarations of law:

"1. If the note was taken by the sheriff Castello for the sale in partition of a tract of land under decree of the St. Louis Land Court, made by him as sheriff of St. Louis county, for the benefit of the parties mentioned in the answer in this cause, or any of them, he held the same as trustee for said parties, and he has no right to sell said note.

"2. And if the court finds from the evidence, that before the note was purchased by plaintiff, he saw and had knowledge of said note and the endorsements thereon, and of the deed of trust in evidence, then he cannot recover herein."

The court refused to give the above declarations, and rendered judgment for the plaintiff.

A similar question to the one presented in this case was before this court in Powell v. Morrison et al., 35 Mo. 244; and it was there held that the word "sheriff" after the name of the payee of a promissory note was merely descriptive of the person of the payee and endorser; and that the endorsee of such a note, who took it in good faith, for a valuable consideration, before its maturity, was not chargeable with notice of a trust by means of such description. There was also a deed of trust to secure the deferred payments given in that case, but from the report it is not shown whether the endorsee had actual notice of it or not. The decision is placed strictly and exclusively on the ground of *descriptio personæ*. There are many authorities holding that the words agent, trustee, guardian, executor, administrator, &c., annexed to the name of the payee, are merely descriptive, and that a sale, endorsement and delivery of the instrument by the payee in the note containing the designation will confer a good title. But where the payee holds the note or instrument in a fiduciary capacity, and the purchaser or endorsee has notice of the fact, and also that the trustee in the sale is committing a breach of faith, will he be protected? Certainly not.

But the main question is, what will be considered notice, or sufficient to put the party on inquiry. By the Revised Statutes, in cases of partition, the sheriff acts for all the parties on sale of the property. It is made his duty to take the notes and bonds for the purchase money, collect and pay over the same according to the order of the court, and make a deed to the purchaser—R. C. 1855, p. 1116, § 35. He acts by order of the court and for the parties. He is a trustee, executing a trust devolved upon him by law. It is true, the instrument here declared on is in the nature of commercial paper; it is a negotiable promissory note, having by the statute the force and character of an inland bill of exchange. And it is the well settled doctrine that a *bona fide* holder of a negotiable instrument for a valuable consideration, with-

out notice of facts which impeach its validity between the antecedent parties, if he takes it under an endorsement made before the same becomes due, holds the title unaffected by these facts, and may recover thereon, although, as between the antecedent parties, the transaction may be without any legal validity—Swift v. Tyson, 16 Pet. 1. But this rule is confined to *bona fide* or innocent purchasers, and not to persons having knowledge of infirmities or equities which attached to the instrument at the time they negotiated for it. And the question whether they had such knowledge or not, is a question of fact to be submitted to the jury for their determination; and if the jury find they were impressed with notice at the time of the transfer, then they cannot recover.

In the case of Evans v. Kymer, 1 Barn. & Ad. 528, a bill was drawn by Nevett, and accepted by Evans, for the purpose of being discounted, and having the proceeds applied in the payment of other bills accepted by Evans; but the other bills, before they became due, were paid by Evans, who directed Nevett to hold the first mentioned bill for his (Evans') use, and not to part with it without his authority. Nevett, however, for his own purposes, endorsed the bill to Gore & Co. for a valuable consideration, who had notice of the fact that it belonged to Evans, and that Nevett had no authority to part with it. The Court of King's Bench decided that the property in the bill was in Evans, the acceptor. Where a party held a note on a guardian, and purchased a mule and some plank of the guardian, and it was agreed that it should go in satisfaction of the note, but the guardian subsequently refused to apply the articles as a credit on the note, and brought suit on the same, it was held that such an application of the ward's money would have been a wilful misapplition of the trust fund, and would have involved both parties in a direct breach of trust, and neither could enforce the agreement. All parties who are concerned in the transaction, with notice, are equally liable in breaches of trust—Lancaster v. Allen, 1 Head, 326; Wilson v. Moore, 1 Myl. & Keen, 127. The facts in this case do not call for a decision as to

whether a note given to an officer, with the word "sheriff" annexed to his name, is such an instrument as will, on its face, apprise the purchaser that the officer holds it as trustee for the use of beneficiaries. The answer does not rely upon this alone, but alleges additional notice by means of the deed of trust. And it is attempted by evidence to show that plaintiff knew of the deed of trust when he purchased the note. This brings the case within the principle of the decision in Ranney v. Brooks, 20 Mo. 105. There the note expressed on its face to be given to John P. Edinger; sheriff of Cape Girardeau county, for the purchase of a tract of land sold to make partition. Judge Ryland, in delivering the opinion of the court, said: " The bond on which this action is prosecuted shows on its face that it was executed to John P. Edinger, and by him received in his character as sheriff of Cape Girardeau county. The promise is to pay to John P. Edinger, sheriff of Cape Girardeau county, Missouri, the sum of two hundred and seventy dollars, for value received, in the purchase of a tract of land sold to make partition thereof amongst the heirs of Joseph Whitney, deceased. This phraseology will necessarily show that the bond is not the individual property of Edinger. It is not given to John P. Edinger, sheriff, stopping at that description; but it goes further—calls him sheriff of Cape Girardeau county, Missouri— says it is for a tract of land sold (that is, by him, as such sheriff) to make partition amongst the heirs of Whitney, deceased." And it was held that the endorsee of the sheriff could not recover. The deed of trust showed most clearly the consideration for which the note was given; it accompanied the note, and was just as efficient and potent to impart notice to all those who saw it, or to whom it was delivered, as if the terms had been written on the face of, or been embodied in, the note.

If the plaintiff knew of the deed of trust when he purchased the note, he cannot plead want of knowledge.

Reversed and remanded. Judge Holmes concurs; Judge Lovelace absent.