I. M. MASON, TRUSTEE, Plaintiff in Error, v. BANK OF COMMERCE, Defendant in Error.

### November 25, 1884.

1. TRUSTEES — TRANSIENT SECURITIES. — A trustee who is required by the instrument which creates the trust to hold the capital for the remaindermen, has an implied power to convert a transient security into money for the purpose of a permanent investment.

2. —— A promissory note which will mature in less than one year is a transient security.

3. —— A purchaser in good faith of such a note from the trustee takes the title thereto, and is not bound by the acts of the trustee with reference to the purchase money paid.

ERROR to the St. Louis Circuit Court, THAYER, J.
*Affirmed.*

KRUM & JONAS, for the plaintiff in error: Under the circumstances given in evidence by Wherry, the note was taken out of the category of ordinary commercial paper. — *Renshaw* v. *Wills*, 38 Mo. 201; *Third National Bank* v. *Lange*, 51 Md. 138; *Shaw* v. *Spencer*, 100 Mass. 382; *Duncan* v. *Jaudon*, 15 Wall. 173–175. If a man knows that the legal estate is in a third person at the time he purchases, he is bound to notice the terms and extent of the trust. — 2 Sudg. on Vend. 542; *Christmas* v. *Mitchell*, 3 Ir. Ch. 535; *Hall* v. *Smith*, 14 Ves. jr. 432; *The United States* v. *Sturges*, 1 Paine, 535; *Renshaw* v. *Wills*, 38 Mo. 201.

JAMES TAUSSIG and CHARLES S. TAUSSIG, for the defendant in error: One who purchases from a trustee with notice that he is buying trust property acquires a perfect title, if by the instrument creating the trust the trustee has the power to sell or vary securities. — Perry on Tr., sect. 225; *Ashton* v. *Atlantic Bank*, 3 Allen, 217; *Creighton* v. *Cringle*, 3 S. C. 77; *Dillaye* v. *Com. Bank*, 57 N. Y. 354; *Fountain* v. *Anderson*, 33 Ga. 373; *Goodwin* v. *Amer.*

*Nat. Bank*, 48 Conn. 564; *Shaw* v. *Spencer*, 100 Mass. at pp. 389 and 391. And such a purchaser, knowing that he is buying trust property, is put upon no inquiry except to ascertain whether the power to sell or vary securities exists. He is not responsible for misapplication of the purchase-money. — Perry on Tr., sects. 225, 814; *Ashton* v. *Atlantic Bank*, 3 Allen, 217; *Shaw* v. *Spencer*, 100 Mass. 391, 392; *Goodwin* v. *Amer. Nat. Bank*, 48 Conn. 564.

THOMPSON, J., delivered the opinion of the court.

Wherry was trustee under Julia G. Cabanne's will. The nature of the trust was expressed in the following language : " First, to permit my said son Julius to use and enjoy the said property and take the rents, issues and profits thereof as long as he shall live ; and, second, if he die, and his wife, Ann Stella, survives him, to permit the said Ann Stella to use and enjoy the said property, and to take the rents, issues and profits thereof as long as she shall live and remain the widow of the said Julius ; and, third, after the death of the said Julius, and the death or marriage of the said Ann Stella, to hold the same in trust for such child or children as may be then living, and the survivor or survivors of them until the youngest of such children shall be twenty-one years of age or be married, and shall then convey the absolute title to such child or children.

"And if after the death of the said Julius, and the death or marriage of said Ann Stella, there be no child of said Julius, or if his children all die before becoming twenty-one years old or being married, then my will is, and I devise and bequeath accordingly, that the share hereby set apart for the said Julius pass to and be vested in my own right heirs in the same manner and proportions, as if it descended from me by direct inheritance.''

As such trustee Wherry held an unmatured negotiable promissory note, made payable to certain persons and by them indorsed in blank. He went to the president of the

Bank of Commerce and asked to have the noted discounted, saying: " This note I hold as trustee, and desire to accommodate the beneficiaries under the trust by making a loan, and I want to negotiate the note." The president of the bank, having made some inquiries to satisfy himself as to the goodness of the parties to the note, discounted it for him. The proceeds were paid to him by means of a cashier's check, which was made payable to him as trustee, and which he presented to the paying teller, who handed to him the money. The note was paid to the bank at its maturity. The money which the bank paid to Wherry for the note was misappropriated by him, and lost in the general wreck of his business. He subsequently resigned his trust; the plaintiff was appointed trustee in his stead, and has brought this action against the Bank of Commerce to recover the money which it received from the parties to the note in payment of it at its maturity. Upon evidence substantially as above stated, the circuit court gave an instruction to the effect that the plaintiff could not recover.

The action necessarily proceeds upon the idea that the Bank of Commerce received a portion of the trust funds which were in the hands of Wherry, under such circumstances that the law will allow it to be recovered for the benefit of those interested therein. If this is so, it is plain from the above statement, that it must be in consequence of some rule of law under which parties who deal with trustees proceed at every step at their peril, and under which parties who have dealt with trustees in entire good faith are liable to suffer the plainest injustice.

We hold the following propositions to be well settled: —

1. That the holder of an unmatured negotiable promissory note indorsed in blank is *prima facie* the owner thereof with full power to dispose of the same; and that whoever purchases it from him for value gets a good title thereto, in the absence of knowledge of circumstances affecting the title of such holder, provided such purchaser act in good

faith. It is not sufficient to destroy his title that there were circumstances sufficient to put a prudent man upon inquiry, or that he may have been negligent in failing to avail himself of his means of knowledge. The test of his liability is not negligence or diligence, but it is good faith or bad faith; although the fact of negligence may, under circumstances, be evidence tending to show bad faith. *Goodman* v. *Harvey*, 4 Ad. & El. 870; *Swift* v. *Tyson*, 16 Pet. 1; *Goodman* v. *Simons*, 20 How. 343; *Hamilton* v. *Marks*, 63 Mo. 178; *Edwards* v. *Thomas*, 66 Mo. 483.

2. But where the person to whom such a note is offered for sale or discount has distinct notice at the time that the holder does not own it in his own right, but as trustee, he is bound at his peril to inquire whether the instrument creating the trust has conferred power upon the holder so to dispose of it. In the case of executors, administrators, and guardians, the trust is so far governed by law that such trustees have, *prima facie*, the power to sell personal property belonging to the trust estate. A person may, therefore, purchase such property of such trustees under the assurance that the law will protect him in his title, provided he act in good faith. *Field* v. *Schieffeling*, 7 Johns. Ch. 160; *Fountain* v. *Anderson*, 33 Ga. 372; *Goodwin* v. *American National Bank*, 48 Conn. 564; *Bayard* v. *Farmers'*, etc., *Bank*, 52 Pa. St. 235; *Lowry* v. *Commercial*, etc., *Bank*, Taney's Dec. 333.

But the powers of a trustee under a will are such as are conferred upon him by the will, and none other. He has not, *prima facie*, the power to sell personal property, or to vary securities belonging to the trust estate. Whether or not he have such power is a question the answer to which must be sought for in the terms of the will; and whoever purchases of him ordinary personal property belonging to the trust estate, or negotiable paper, with knowledge that he holds it as trustee, must make this inquiry at his peril. *Loring* v. *Salisbury Mills*, 125 Mass. 138; *Maywood* v.

Railroad Bank, 5 Rich. Law, 379 ; Bayard v. Farmers,' etc., Bank, 52 Pa. St. 237 ; Third National Bank v. Lange, 51 Md. 138.

3. But if he make this inquiry, and find that such a power exists in the trustee, or if, having notice of the trust, he assumes the risk of its existence without inquiry, and thereupon purchase the property in good faith, he will get a good title if the power in fact does exist.   He is not bound to see to the application which the trustee may make of the purchase-money.   Goodwin v. American National Bank, 48 Conn. 564 ; Shaw v. Spencer, 100 Mass. 391 ; Ashton v. Atlantic Bank, 3 Allen, 217 ; Fountain v. Anderson, 33 Ga. 337.   The last proposition is declared by statute in this state.   Rev. Stats., sect. 3937.

4. Where, by the terms of an instrument creating a trust, the trustee is to pay the income of the trust property to a life tenant and hold the capital for a remainderman, he has an implied power to sell perishable property, and to convert into money transient securities, for the purpose of making permanent investments.   Howe v. Earl of Dartmouth, 7 Ves. 137, 151 ; Litchfield v. Baker, 2 Beav. 481 ; Pickering v. Pickering, 4 Myl. & Cr. 298 ; Bruce v. Dixon, 10 Sim. 638 ; Cairns v. Chaubert, 9 Paige, 163 ; Kealey v. Tappan, 45 N. H. 243.

Applying these principles to the case in judgment, we have no doubt that, by the terms of Julia G. Cabanne's will, Wherry had impliedly the power to convert the note in question into money for the purposes of the trust.   The trust was, indeed, larger in its terms than the trusts in the case of which the English courts of chancery, and the American courts following them, have implied such power ; for here, the trustee was not merely to permit Julius Cabanne and his wife to have the rents, issues, and profits of the trust property, but he was to permit them to enjoy the property itself.

A promissory note having less than a year to run is mani-

festly a transient security, such as a trustee, under the rule above stated, ought to convert into money for the purpose of a permanent investment. Trustees, in the course of business, are liable to receive negotiable promissory notes from the lessees of real property, and from other persons having dealings with the trust estate. Such notes may, *prima facie*, as well form a part of the income as a part of the capital of the estate; and the trustee may, in the proper discharge of his trust, under the terms of such an instrument as the will here in question, have occasion to convert such transient securities into money in order that it may be handed over to the beneficiaries in the trust.

Since, then, Wherry had the power to convert the note in question into money, the only remaining inquiry can be whether, in purchasing it from him by way of discount, the Bank of Commerce acted in good faith. Upon this point there is not a particle of doubt. There were no circumstances developed by the evidence which would authorize the court to put such a question to the jury. There was nothing in the statement of Wherry to the president of the bank that he wanted to use the money " to accommodate the beneficiaries under the trust by making a loan," which would raise a suspicion that a breach of trust was intended. It might well be an accommodation to the beneficiaries in the trust to convert the note into money and lend it to them upon such security as a trustee is authorized to take. Certainly, there is nothing in this statement that would convey an intimation, or even a suspicion, to a prudent business man that the trustee intended to convert to his own use the money so received. The statement was made by Wherry for the very purpose of warding off such a suspicion, because no bank would, for the sake of getting the discount usually reserved upon commercial paper, run any risk of its title in case of a note as large as this was, it being for the sum of $2,666.66. We are, therefore, clearly of opinion that the circuit court was right in giving the instruction that the plaintiff could not recover.

In reaching this conclusion, we have not overlooked the cases cited to us by the learned counsel for the plaintiff. In *Renshaw* v. *Wills* (38 Mo. 201), a note secured by a deed of trust had been given to a sheriff in payment of purchase-money at a partition sale. The note expressed on its face that it was given to him as sheriff. The sheriff sold it before maturity. The court held that the purchaser did not get a good title. He had notice from the terms of the note itself of the fiduciary character in which the sheriff held it. The reasoning of the court is not very clear; but the decision may be supported upon the ground that a sheriff has presumptively no power to sell a note thus held by him, and that good faith requires that a person to whom such a note is offered by a sheriff for sale should satisfy himself concerning the power of the latter to sell it. If, however, this decision goes against the conclusion at which we have arrived in this case, it is sufficient for us to say that, in so far as it places the liability of the purchaser of a negotiable note upon the duty of making inquiry, it is overruled by the subsequent cases of *Hamilton* v. *Marks* (63 Mo. 178), and *Edwards* v. *Thomas*, (66 Mo. 483). The case of the *Third National Bank* v. *Lange* (51 Md. 138), proceeded upon the ground that the bank purchasing the note had knowledge from the terms of the note that the holder was a trustee; that it was hence bound to make inquiry as to his power to sell the same. Having failed to do this, and it having turned out that he was disposing of it in fraud of his trust, it was held that the bank did not get a good title. We do not understand from the decision of the court whether the trustee had or had not in fact the power to sell the note. Assuming that he had such power, if the Maryland court intended to hold further that the purchaser was bound to inquire into the purposes for which he was offering the note for sale, and to satisfy himself that those purposes were lawful and within the terms of the trust, we feel bound to say that, while we have great respect for the

court pronouncing the decision, it is contrary to the rule of the two cases above cited from our supreme court, and it does not meet with our approval. Our decisions proceed upon the ground that public policy requires that those who purchase before maturity negotiable securities, which enter so largely into the movements of commerce, should not lose their title because they have not suspected fraud or instituted inquiries where all seemed fair, honest, and conformable to business usage.

The judgment of the circuit court is affirmed. All the judges concur.