THE A. H. WHITNEY COMPANY, Appellant, v. LON. BURNHAM, Respondent.

### St. Louis Court of Appeals, February 23, 1892.

1. **Principal and Agent:** SUFFICIENCY OF THE EVIDENCE. The evidence in this cause is considered, and it is *held* sufficient to sustain a finding of authority on the part of an agent of the plaintiff for the sale of merchandise to appoint sub-agents.

2. **Sales:** EMBEZZLEMENT OF PURCHASE PRICE BY AGENT OF SELLER. When an agent sells personalty intrusted to him for that purpose to a purchaser in good faith, and collects and embezzles the purchase money, the purchaser's title is not affected by the embezzlement.

*Appeal from the Butler Circuit Court.*—HON. JOHN G. WEAR, Judge.

AFFIRMED.

*J. L. Fort*, for appellant.

*S. M. Chapman*, for respondent.

THOMPSON, J.—This was an action of replevin for a piano. The defendant had a verdict and judgment, and the plaintiff, appealing to this court, assigns for error that the verdict was against the evidence. In the arguments presented in support of this assignment the counsel for plaintiff overlooks the fundamental proposition that the burden of proof was upon the plaintiff, and that, if no evidence had been offered by either party, the defendant would have recovered. If the

plaintiff had recovered, and if the defendant, appealing, had assigned for error, that there was no evidence to warrant the verdict, a more difficult question would have been presented ; but, as it is, we have no difficulty in holding that the supposed error with which we have to deal is not well assigned. The plaintiff gave evidence to the effect that the plaintiff is engaged in manufacturing and selling pianos and organs at Quincy, Illinois ; that they appointed as their agent to sell their goods in southeast Missouri one D. W. Wilson. Although this appointment was in writing, it was not put in evidence by plaintiff, and plaintiff offered no evidence tending to show the extent of the authority of Wilson as the plaintiff's agent, beyond the fact that plaintiff was in the habit of shipping its goods to Wilson for sale. Wilson resided at Cape Girardeau, Missouri, and the piano in question was shipped to him for sale by the plaintiff from New York to Cape Girardeau, and was by him shipped to Poplar Bluff, consigned either to his own order or that of J. B. Post, Wilson does not know which. This J. B. Post was a sub-agent, appointed by Wilson to sell pianos for the plaintiff. Although Wilson testifies that the plaintiff did not know Post, it does appear that Post made several sales of instruments of the plaintiff to various parties and collected money therefor, and that in one of these cases he used the printed form of contract in use by the plaintiff. Wilson, testifying for the plaintiff, admits that he shipped the piano in controversy to sell, and does not deny that Post did sell it to the defendant. Wilson also testifies that the value of the piano was $300.

With this evidence before the court, furnished in part by the plaintiff and in part by the defendant, the defendant put in evidence the following receipt :

"$400. POPLAR BLUFF, December 28, 1890.

" Received from Lon. Burnham $400 for Wheelock piano. J. B. POST."

The jury were warranted in inferring from this evidence that Post, acting as agent for the plaintiff, and as such agent having in his possession this piano for sale, sold it to the defendant for $400, and had been paid for it. It is to be borne in mind that the plaintiff did not give any evidence tending to show that Wilson had no authority from the plaintiff to appoint sub-agents. The fact that Post was receiving consignments of the goods of the plaintiff for sale, and was selling such goods to different persons and collecting payments therefor in installments, and even making contracts of sale and mortgage upon the printed blanks used by the plaintiff, is evidence from which the public would naturally infer, and from which they would be entitled to infer in the absence of countervailing evidence, that Post was selling the plaintiff's goods with the plaintiff's authority. It would seem then that, upon plaintiff's theory, Post was the plaintiff's agent whenever he accounted for the proceeds of the sales which he made, but not the plaintiff's agent whenever he failed to account for such proceeds. That the title of the defendant to the piano could not be affected by the fact that the plaintiff's agent, who made the sale to the defendant, embezzled the purchase money which the defendant paid to him, is a proposition which need not be argued. *Bank of Commerce v. Mason*, 16 Mo. App. 275.

The argument that the receipt above recited does not identify by number the particular piano here in controversy is clearly untenable. There was evidence that this particular piano had been shipped to Post to sell, and there was no evidence that he had ever sold any other piano to the defendant. Besides the receipt was not objected to on this or any other ground, and it is evident that the point now raised is an afterthought.

It may be added that, if we take this receipt in connection with the plaintiff's own evidence, it warranted the jury in finding as they did. Wilson, the

only witness for the plaintiff, testified : "I am one of the agents of this company (meaning. plaintiff). The company has a good many agents. My appointment is in writing. I have not got the writing with me—supposed it would not be necessary—really did not think about it—I was appointed agent four years ago. It was in 1887. I know Post. Knew him one year and a half ago. This piano was shipped from New York to me at Cape Girardeau, and I shipped it to Poplar Bluff to J. B. Post or myself, I do not remember which. I frequently shipped to myself. I was not at the Bluff to take charge of the piano when it arrived. I knew nothing of it in transit. It fell into the hands of J. B. Post. He wrote me that he got it. I know he did get it, because I found it here. I shipped several pianos and organs to him. Post is now in jail at Rushville, Illinois. I put him there myself. The piano was shipped before Post was put in jail. Shipped for freight to be collected here. I did not take charge of it at the depot at Poplar Bluff. I shipped the piano to Post to sell. This piano was shipped to sell. I don't know that Post sold it. I did ship pianos and organs to Post to sell. Post made frequent sales of pianos and organs. Post did not make returns to me of all the sales. I do not know whether Post sold to Burnham or not. I only know what Post and Burnham said about it. Post did not say that he sold to Burnham, or that he did not sell to him. Post said Burnham got the piano from him, but he did not get value received for it. I do not know myself what Post did do with the piano. I think this piano was shipped to the Bluff without the payment of freight. Post made contracts with parties that he turned in to me. (A contract between the plaintiff and Mrs. E. H. Bayard was then shown to the witness, and he was asked to identify the signatures thereon of Wilson and Vanetten, which he did identify; this contract was offered in evidence by the defendant.) I don't know Henry Thomas. I found

out last night that Post sold organ to Henry Thomas. Post sold an organ to Mr. Barker and Mrs. E. H. Bayard. The A. H. Whitney Company furnished me with blank contracts like the one shown me, and I furnished these contracts to Post. Post was authorized by me to make sales."

The jury were warranted in inferring from this evidence that Wilson had been appointed as the plaintiff's agent to sell its pianos. They were also warranted in inferring that the plaintiff had conferred upon him authority to adopt the usual means of effecting sales, which would include the right to appoint sub-agents. They were also warranted in inferring that Wilson did appoint Post as *his* agent for this purpose, and that, in the capacity of agent for Wilson, Post sold this particular piano. The legal conclusion was that it was sold by Wilson himself ; for *qui facit per alium facit per se.* What Wilson did through the agency of Post, he did himself. The act of Post was the act of Wilson, and as Wilson had authority from the plaintiff to sell the particular instrument, when Wilson sold it through Post, that passed the title of the plaintiff to the defendant. In this view of the evidence the testimony of Wilson that "the plaintiff never authorized the sale of this instrument to Lon. Burnham," and that "I had Post employed to sell organs and pianos for me," and that "there was no contract of any kind between Post and the plaintiff—Post was not known to the A. H. Whitney Company,"—was totally irrelevant; as much so as though the piano had been sold by a salesman of Wilson in his own store at Cape Girardeau. Wilson had authority from plaintiff to sell the piano ; he put it into the hands of Post to sell for him ; Post sold it to the defendant; and that passed the title to the defendant, as much as though it had been sold to defendant by Wilson in his own store. If Post embezzled the purchase money, Wilson may be answerable for that to the plaintiff, but he cannot unload this responsibility

upon the defendant without showing fraud or collusion between the defendant and Post,—of which he gave no evidence.

The judgment will accordingly be affirmed. It is so ordered. All the judges concur.