CHARLES GALLOWAY, Respondent, v. CHARLES H. GLEA-SON *et al.*, Defendants; ESTHER ROSENBLATT *et al.*, Appellants.

St. Louis Court of Appeals, January 29, 1895.

1. **Trusts:** DIVERSION OF TRUST FUNDS. The transfer of trust funds by a trustee in satisfaction of, or as security for, the individual indebtedness of the trustee, is an illegal diversion of the same.

2. **Bills and Notes:** NOTICE OF TRUST. A note, which designates the payee as trustee, on its face imparts notice that it is held by him in trust, and not as his own individually.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*J. M. Holmes* for appellants.

*Lee & McKeighan* and *Gustave L. Stern* for respondent.

The mere use of the word "trustee" in the assignment of a note imports the existence of a trust, and gives notice thereof to all into whose hands the instrument may come. *Shaw v. Spencer*, 100 Mass. 382, and

cases cited; *Sturtevant v. Jacques*, 14 Allen, 523. When a note discloses upon its face that it is held by one as trustee, a transferee of the note who takes it from the trustee as security for the trustee's personal indebtedness, takes with notice of the beneficial interest. *Payne v. Nat. Bank*, 43 Mo. App. 377; *Mason v. Bank*, 16 Mo. App. 275; *Shaw v. Spencer, supra; Duncan v. Jaudon*, 15 Wall. 165; Tiedeman on Commercial Paper, sec. 300; *Fourth Nat. Bank v. Lange*, 51 Md. 138; *Strong v. Strauss*, 4 Ohio St. 87.

BIGGS, J.—On July 7, 1892, a syndicate was formed for the purpose of purchasing, subdividing and selling a certain tract of land in the city of St. Louis. The defendant, Charles H. Gleason, was a member of the syndicate. He was selected as its agent or trustee, and the land was conveyed to him for the benefit of himself and associates upon the following condition, or trust, among others:

"*Third.* In trust to apply the proceeds arising from any and all incumbrances, rents, leases and sales of premises to the payment of all taxes, assessments and charges against said property, including the expense of managing, controlling and subdividing the same and selling it or any portion thereof, and, after these, to [the payment of any and all incumbrances upon said premises, or any part thereof, and interest on the same, and finally to divide the net proceeds remaining after all such disbursements among and between the following shares and proportions," etc.

The property was improved by Gleason, and put on the market. There was a deed of trust on the land to secure a note for a part of the purchase money, and by an arrangement between the syndicate, Gleason and the holder of that note, it was agreed that, whenever Gleason should make a sale, the cash and note

should be applied on the debt of the syndicate, and the property sold should be released from the deed of trust.

On the tenth day of March, 1893, Gleason sold some lots of the syndicate to the plaintiff for $1,500. Five hundred dollars of the amount was paid in cash, and two principal notes for $500 each, due respectively in one and two years and payable to the order of Charles H. Gleason, trustee, were executed by the plaintiff for the remainder of the purchase money. He also gave several interest notes. The plaintiff received a conveyance of the property, and he immediately reconveyed it to a trustee to secure the notes for the purchase money. Gleason was a member of the firm of Charles H. Gleason & Company, who were engaged in buying and selling real estate on commission and negotiating and making loans for their customers. The appellant, Esther Rosenblatt, was one of their clients. On the fifth day of April, 1893, she deposited with the firm $3,000 to be loaned out, for which she took the following receipt:

"ST. LOUIS, Missouri, April 5, '93.

"Received of Mrs. Esther Rosenblatt a check for three thousand dollars, payable to B. M. Isaacs, said amount to be paid to Mrs. Rosenblatt on demand, or loaned out as directed."

"(Signed.)          CHARLES H. GLEASON & CO."

Soon after this transaction Gleason & Company became seriously embarrassed in their financial matters, which finally resulted in complete bankruptcy. They failed to loan out Mrs. Rosenblatt's money, or to return it. She visited Gleason almost daily to see about the business, and finally she became so importunate that he turned over to her the plaintiff's notes, and also gave her his note for $2,000 which he secured by a second mortgage. This transaction took place on the twenty-second day of June, 1893.

On the first day of July following, the plaintiff, desiring to pay his notes before maturity, made an arrangement with Gleason whereby he was to take them up by the payment of $990. He paid Gleason $500 on that day, but did not get the notes. Gleason promised him that he would look up the notes, and would deliver them to him when he paid the balance of the money. On July 6 he paid Gleason the remaining $490. He did not get the notes on that day. Gleason represented to him that they were about the office, that he was too busy to look for them on that day, but would do so in a few days and turn them over to him. The plaintiff visited Gleason almost daily for about a fortnight and was put off by various excuses, when, finally, Gleason told him that the notes had been turned over to Mrs. Rosenblatt as collateral security for a debt he owned to her, but that he had made arrangements to get them back and would deliver them to him in a few days. This he failed to do. After a refusal by Mrs. Rosenblatt to give up the notes, the plaintiff instituted the present action in equity against Mrs. Rosenblatt, Gleason and the members of the syndicate, for the purpose of having his notes delivered up for cancellation, and the deed of trust on his lots satisfied. There was temporary injunction restraining Mrs. Rosenblatt from selling or disposing of the notes during the pendency of the suit. On the hearing of the cause the issues were found in favor of the plaintiff, and Mrs. Rosenblatt was ordered to deliver the notes into court for cancellation. The deed of trust was declared satisfied, and the injunction against Mrs. Rosenblatt made perpetual. Mrs. Rosenblatt and her husband have appealed.

Under the conditions of the trust deed to Gleason he might lawfully dispose of any of the trust property for the benefit of the trust estate, but he could not sell

it in satisfaction of, or pledge it as security for, his individual debts or those of his firm, and there is no evidence *aliunde* that he possessed any such power. The notes in controversy indicate on their face the existence of the trust, thereby imparting to Mrs. Rosenblatt notice of its conditions and limitations. *Payne v. Bank,* 43 Mo. App. 377; *Mason v. Bank,* 16 Mo. App. 275; *Shaw v. Spencer,* 100 Mass. 382; *Duncan v. Jaudon,* 15 Wall. 165. Therefore, if Mrs. Rosenblatt accepted the notes from Gleason as collateral security for the money deposited with his firm, or in part satisfaction of the firm's obligation to refund it, then the judgment must be affirmed.

The testimony of Mrs. Rosenblatt is to the effect that she had frequently deposited money with Gleason with the view of purchasing real estate loans through him, and that she purchased, *bona fide,* the plaintiff's notes as an investment, and did not accept them as security or in satisfaction of Gleason's obligation to her, and that her frequent visits to Gleason were for the purpose of hastening an investment of her money and not for a return of it. She denied that she had any knowledge of the insolvency of Gleason at the time she received the notes.

On the other side Gleason testified that the notes were given as collateral security for the debt due from his firm to Mrs. Rosenblatt; that, in the month of May, he informed her of his embarrassment and told her that he had not invested her money, and could not then return it; that he still hoped to tide over his difficulties and continued his efforts to secure suitable securities to satisfy her claim; that eventually her visits became so frequent and her demands so urgent for security or a return of her money, that he gave the plaintiff's notes and his individual note for two thousand dollars.

The plaintiff testified that, at the time he

demanded the notes of Mrs. Rosenblatt, she told him that Gleason had given them to her as collateral security for her debt from him.

Mrs. Rosenblatt had a conversation with Daniel G. Taylor, one of the plaintiff's attorneys, as to the circumstances under which she received the plaintiff's notes. According to Taylor's testimony she said to Mr. Gleason: "Mr. Gleason, I am tired coming down here. I am an old woman. I can't stand it. I must have my money. I must have it. Now, where you go, I go; and where you sleep, I sleep; and where you eat, I eat, until I get my money, and then she said Mr. Gleason turned to his clerk and said 'give her the Galloway notes.'"

Mrs. Fannie Carroll testified that she met Mrs. Rosenblatt quite often at Gleason's office, and that she told her that she was trying to get some collaterals from Gleason for the money he owed her. The witness said, further, that she was present when Mrs. Rosenblatt received the plaintiff's notes, and she heard some of the conversation between them. She said to Gleason. "I want you to fix me. You must give me something to-day." Afterwards she met her at Gleason's office, when she informed witness that Gleason had written to her to bring the Galloway notes to the office, and that she did not know whether he intended to give her the money for the debt or other collaterals.

The stenographer in Gleason's office also testified that Mrs. Rosenblatt visited the office almost daily, and was very urgent in her demands either for a return of her money, or for some security for its payment, and that the Galloway notes were turned over to her temporarily as security for her debt.

In addition to the foregoing testimony the circumstances are favorable to the conclusion reached by the circuit court. The evidence shows that Mrs. Rosen-

blatt was an old lady of great shrewdness and business experience, and that her rule was to accept no loan that was not secured by a first mortgage. She accepted the plaintiff's notes and the individual note of Gleason, both of which were secured by second mortgages, and she took them without inquiry or information as to the title or value of the lands. This is against the idea that she purchased the notes as an investment. It shows rather that she was fully advised of the financial condition of Gleason, and that it behooved her to accept, without question, anything offered which would likely afford any security for her money.

Again, after she had obtained the plaintiff's notes it was suggested to her by some one that Gleason had his life heavily insured, and that it was not improbable that his financial troubles would drive him to commit suicide, and that it would be advisable for her to get Gleason and his wife to give their joint note for her debt. Acting on the suggestion she proposed to Gleason that, if he would give such a note, she would surrender the Galloway notes and the individual note of Gleason. The proposition was accepted and the note of Gleason and wife for three thousand dollars, (dated back to April 5th, the day the money was deposited) was delivered to her. Upon reflection, as she admits, she concluded to hold on to all of the notes until she got her money. This tends to show that she received and held the plaintiff's notes as collateral merely, and not as an investment.

Our conclusion is that the judgment of the circuit court is supported by the preponderance of the evidence, and ought to be affirmed. It will be so ordered. All the judges concur.