The Third National Bank of Baltimore *vs.* John H. Lange, and others.

*Note to a Trustee not Negotiable Paper—Purchase of such a Note, without Inquiry, at the Risk of Buyer—Liability of Endorsers who Endorsed as Security for Drawers—Parol Evidence admissible to show Character of such Endorsement.*

N. W. W. as trustee, sold property under a decree of a Court of equity, and for one of the deferred payments of the purchase money, took from the purchasers a note payable to his order as trustee endorsed by J. R. & S. as securities for the drawers. The note was afterward endorsed above J. R. & S's signature, by N. W. W. trustee, and sold to the appellant. In a proceeding instituted by the *cestui que trust,* before the maturity of the note, to enjoin the appellant from collecting it, it was HELD:

1st. That this note was not within the class of paper known as commercial paper; and that it was the duty of the appellant before purchasing it, to have made inquiry into the right of the trustee to dispose of it, and that the note having been sold by the trustee in fraud of his trust, the appellant should suffer the consequences of the risk it assumed.

2nd. That J. R. & S. could not be held liable as second endorsers, guarantors of the endorsement of N. W. W. trustee; as it appeared in evidence, that at the time of the endorsement by J. R. & S., there was no previous endorsement, and that the name of J. R. & S. was placed upon the note as security, and the obligation was that of original makers; and that when the note was paid their liability would cease.

3rd. That parol evidence was admissible to show the character in which J. R. & S. stood relative to this note.

APPEAL from the Circuit Court of Baltimore City.

This was a proceeding in equity by the appellee, Lange, against the appellant and others, to enjoin the appellant from collecting or attempting to collect a promissory note, purchased by it, but equitably belonging ·to the appellee

Lange, or from protesting it, or taking any further steps in regard thereto. The injunction ordered to be issued, was served upon the appellant three days before the maturity of the note. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*Henry Stockbridge,* for the appellant.

The form of the note in question made it a negotiable instrument. It was made payable to order, and so, when endorsed in blank, might pass from hand to hand like a bank note; was entitled to all the immunities, and carried with it all the incidents of negotiable commercial paper. 3 *Duer,* 377; *Story on Bills, sec.* 60; 3 *Kent's Com.,* 77; *Burrill's Law Dic.,* "*Negotiable Words;*" *Bouvier's Law Dic.,* "*Negotiable.*"

The title of the appellant, therefore, to the note was clear and unquestionable. Its receipt by the bank for value before maturity, and without notice of any pre-existing equities, made the title by which the appellant held it good against the world, and gave it a right to collect the note of the maker, which none could successfully resist or assail. 1 *Daniel on Neg. Inst., secs.* 769, 790, 791, 814; *Goodman vs. Harvey,* 4 *Ad. & E.,* 870; *Goodman vs. Simonds,* 20 *Howard,* 343.

And see the note on this case in *Redfield & Bigelow's Leading Cases on Bills of Exchange,* 257; *Dalrymple vs. Hillenbrand,* 62 *N. Y. Reps.,* 5; *Hamilton vs. Marks,* 16 *Am. L. Reg., (New S.,)* 42; *Johnson vs. Way,* 4 *Am. L. T. Reps., (N. S.,)* 62; *Commissioners, &c. vs. Clark,* 4 *Otto,* 285; *Collins vs. Gilbert,* 4 *Otto,* (753,) 757–762; *Cecil Bank vs. Heald,* 25 *Md.,* 563; *Maitland vs. Citizens' Bank,* 40 *Md.,* 540.

But even if there be a right to divert the fund, with which the makers of the note may liquidate their liability,

from the payment of the note to the holder of the note, and to devote it to the benefit of the *cestui que trust* in the prior equity proceeding, there was no right to enjoin the appellant, or in any way to interfere with its collectien of the note from the endorsers thereof. As between the bank and the endorsers, the bank being satisfied of the genuineness of the endorsement, or assuming the risk of its being so, was under no obligation to go further. 1 *Daniel on Neg. Inst.*, secs. 669, 670 *and* 775 ; *Story on Bills, sec.* 110 ; 1 *Parsons on Notes and Bills*, 25.

The complainant in this cause had no right then, to deprive the bank of its rightful claim against the endorsers by enjoining it from fixing their liability by protesting the note at its maturity.

*Thomas R. Clendinen*, for the appellee, Lange.

(The appellee, Lange, insists that the note in question is not a negotiable instrument. The favor which has been shown negotiable instruments is altogether for the benefit of commerce. Instruments of this kind were never used, and were never expected to be used in or for the benefit of commerce. The business and duties of a trustee have no connection with general commercial transactions. He is an officer appointed by Court, and his duties do not lead him into commerce. The protection which is afforded the *bona fide* purchaser for value of a negotiable promissory note used in commercial transactions for the benefit of commerce, has no application to a case where a bank has overstepped its legitimate sphere and business, and bought an obligation for purchase money belonging to the Court. *Sullivan vs. Violett*, 6 *Gill*, 181 ; *Ives vs. Bosley*, 35 *Md.*, 262 ; *Story on Agency, sec.* 228.

The question, upon constructive notice, is not whether the purchasers had the means of obtaining, and might, by prudent caution, have obtained the knowledge in question, but whether the not obtaining it, was not an act of gross or culpable negligence. 2 *Sugden on Vendors*, 529.

OCTOBER TERM, 1878.    141

Third Natl. Bank of Balto. *vs.* Lange, *et al.*

What is sufficient to put a purchaser upon an enquiry is good notice, that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it; therefore, if a man knows that the legal estate is in a third person at the time he purchases, he is bound to notice what the trust is. 2 *Sugden on Vendors*, 542; *Christian vs. Mitchell*, 3 *Ire. Ch. Rep.*, (*N. C.*,) 514; *Story's Equity Juris.*, sec. 400, *b; Maples vs. Medlin*, 1 *Murphy*, (*N. C.*,) 223; *Hall vs. Smith*, 14 *Vesey, Jr.*, 432: *Mourray vs. Ballou*, 1 *Johnson Ch. Rep.*, 575–6–7–81; *U. S. vs. Sturges*, 1 *Paine*, 535.

An administrator or executor cannot bind the estate by a promissory note executed as executor. *Kepler vs. Hall*, 64 *N. C.*, 60; *McFarlin vs. Stinson*, 56 *Ga.*, 396; *Daniel vs. Deevy*, 40 *Iowa*, 252.

Nor by accepting a draft even for a debt due by the estate. *Wisdom vs. Becker*, 52 *Illinois*, 346; *Livingston vs. Gaussen*, 21 *La. Annual*, 286.

An administrator cannot barter or sell the notes or property of the estate for his own use. *Thomason, &c. vs. Brown, &c.*, 43 *Indiana*, 206; *Miller, &c. vs. Williamson*, 5 *Md.*, 230; *Walker vs. Taylor*, 8 *Jurist, N. S.*, 684; *Booyer vs. Hodges, &c.*, 45 *Miss.*, 80; *Miles vs. Helm*, 2 *Smedes & Marshall*, 696, *&c.*

Certificates of stock executed in trust cannot be pledged for a loan to the trustee. Where a certificate reveals a trust, the duty of enquiry is imposed on a lender. *Duncan vs. Jandon*, 15 *Wall.*, 173–175, *&c.; Sturterant vs. Jarques*, 14 *Allen*, 523; *Bancroft vs. Consen*, 13 *Allen*, 50; *Shaw vs. Spencer*, 100 *Mass.*, 388 *to* 394; *Trull vs. Trull*, 13 *Allen*, 407; 2 *Parsons' Leading Cases in Equity*, 22.

A trustee cannot deal with the security for deferred payments for his own benefit, or in any other way than prescribed by the terms of sale. *Wallis vs. Thornton's Admr's*, 2 *Brockenborough*, 427 *to* 435—*By Chief Justice* Marshall; *Story on Agency*, sec. 228.

Third Natl. Bank of Balto. *vs.* Lange, *et al.*

*Albert Ritchie,* for the appellees, Flynn & Emerich and J. Regester & Sons.

J. Regester & Sons were, by conclusion of law, joint makers, and their relation to the note in question cannot be changed by the act of other parties. *Ives vs. Bosley,* 35 *Md.,* 263; *Walz vs. Albach,* 37 *Md.,* 404.

They cannot be charged on any distinct contract of guaranty or endorsement which never existed; and when this note shall be once paid, they are discharged from all liability in respect to it.

The endorsement of a note may be a guaranty that prior endorsements and signatures are genuine and made by competent parties, (*Condon vs. Pearce,* 43 *Md.,* 83,) but that extends only to such endorsement and signatures as were on the note at the time the endorsement sought to be held liable was put there, and cannot be taken to make an endorser the guarantor of signatures subsequently and fraudulently placed above his own; nor can such fraudulent superscription change the relation of a joint maker into that of an endorser.

The appellant, as a national bank, had no power to *buy* the note in question, and derives no title from its pretended purchase. *Revised Statutes, page* 999, *sec.* 5136, *sec.* 7; *Natl. Bank of Charlotte vs. Natl. Exchange Bank of Balto.,* 39 *Md.,* 600; *Wecker vs. National Bank,* 42 *Md.,* 581; *Boyd vs. National Bank,* 44 *Md.,* 47; *Morse on Banks,* 4, 5, 20; *National Bank vs. Pierson, (Minn. R.,) Law Review, January,* 1878, *p.* 397; *Farmers and Mechanics' Bank vs. Baldwin,* 23 *Minn.,* 198.

BRENT, J., delivered the opinion of the Court.

The note, about which this case has arisen, is as follows:

$1100.　　　　　　　　　BALTIMORE, *Feby. 8th,* 1876.

Twelve months after date we promise to pay to the order N. W. Watkins, trustee, eleven hundred dollars with interest, value received.

　　　　　　　　　　　FLYNN & EMERICH."

The names of " N. W. Watkins, trustee," and " J. Regester & Sons," are endorsed upon it.

This note was given for the purchase of property sold by N. W. Watkins, as trustee under a decree of the Circuit Court of Baltimore City, and is for one of the deferred payments, as authorized by that decree. At the time of its delivery to the trustee, it was endorsed by J. Regester & Sons as securities for the drawers,—the terms of sale requiring the deferred payments to be secured in that form.

Subsequently N. W. Watkins wrote above the names of J. Regester & Sons the endorsement " N. W. Watkins, Trustee," and applied to the Union Banking Company to buy the note, offering to sell it for 12 per cent. off. The Banking Company not being willing to buy it, its cashier offered to sell it for Watkins, and placed it in the hands of a bill broker for that purpose. After getting into the hands of a second bill broker it was taken by him to The Third National Bank, the appellant, and offered to it for sale. The bank bought it from the broker at nine per cent. off, and the proceeds seem to have been appropriated by Watkins.

The appellees claim that the bank acquired no right to the note, while it is contended for the bank that the note is embraced in the class of *commercial* paper, and was acquired by it in a usual and proper way.

Without intending to decide upon the right of a national bank to purchase paper, as the question does not necessarily arise in this case, we do not think the note in question is within the class of paper known as commercial paper. Although like it in general form, the fact that it is payable to the order of Watkins, *trustee*, restricts its free circulation, and excepts it from some of the rules governing commercial paper.

No doctrine is better settled, than that a trustee has no power to sell and dispose of trust property for his own use and at his own mere will. One who obtains it from

him or through him with actual or constructive notice of the trust, can acquire no title, and it may be recovered by suitable proceedings for the benefit of the *cestui que trust.* If there are circumstances connected with the purchase which reasonably indicate that trust property is being dealt with, they will fix upon the purchaser notice of the trust, and if he fails to make inquiry about the title he is getting, it is his own fault and he must suffer the consequences of his own neglect.

The general doctrine is stated in 1 *Story's Eq. Juris.*, *sec.* 400, where it is said: "for whatever is sufficient to put a party upon inquiry, (that is, whatever has a reasonable certainty as to time, place, circumstances and persons,) is, in equity, held to be good notice to bind him." A large number of authorities is referred to in the note, and it is unnecessary to allude to them more particularly.

In the case of the present note, it cannot be read understandingly without seeing upon its face that it is connected with a trust and is part of a trust fund. It was the duty of the bank, before purchasing it, to have made enquiry into the right of the trustee to dispose of it. But this it wholly failed to do, and as it turns out, he was disposing of the note in fraud of his trust, the bank must suffer the consequences of the risk it assumed.

In the case of *Shaw vs. Spencer, and others,* 100 *Mass.*, 382, the question is considered, whether the addition of the word *trustee* to the name alone is sufficient to indicate a trust and put a party upon inquiry. That was the case of stock certificates, which were pledged by the holder as collaterals for certain acceptances. The certificates in question were in the name of E. Carter, *trustee.* They were by him endorsed, and one of the questions presented was whether the word *trustee* was sufficient to put the holders upon inquiry, and thereby affect them with notice of the trust. The Court says on page 393, "The rules of law are presumed to be known by all men; and they must

·govern themselves accordingly. The law holds that the insertion of the word 'trustee' after the name of a stockholder does indicate and give notice of a trust. No one is at liberty to disregard such notice and to abstain from inquiry, for the reason that a trust is frequently simulated or pretended when it really does not exist. The whole force of this offer of evidence is addressed to the question, whether the word 'trustee' alone has any significance and does amount to notice of the existence of a trust. But this has heretofore been decided, and is no longer an open question in this commonwealth." And upon the ground that pledgees took the certificates with this notice of the trust, it was held that they could not retain them against the equitable owner, inasmuch as Carter, the trustee, had no authority to use or dispose of them for any such purpose.

The argument, that the bank should not be deprived of its action against J. Regester & Sons, whose endorsement it is claimed guarantees the preceding endorser, would be entitled to weight but for the facts of the case. While the rule is undoubted that a subsequent endorser guarantees the preceding endorsement, it cannot apply to a case where in fact there was no previous endorsement at the time of the alleged second endorsement. The obligations ·of J. Regester & Sons upon this note were those of original makers, *Ives vs. Bosley,* 35 *Md.,* 263; *Good vs. Martin,* (*Sup. Court U. S.*) *Am. L. Reg., Feb'y,* 1878, as is clearly shown by the proof in the case. Their name was placed upon the note as security, and they cannot be held to a contract of guaranty into which they never entered. That parol evidence is admissible to show the character in which they stand relative to this note is settled by the Supreme Court of the United States in the case of *Good vs. Martin,* just referred to.

We are therefore very clearly of opinion, that the bank cannot hold Regester & Sons liable as guarantors.   When the note is paid, their liability ceases.

We find no error in the decree of the Court below, and it will be affirmed.

*Decree affirmed with costs,*
*and case remanded.*