# CHARLESTON.

DOLLAR SAVING & TRUST Co. *v.* CRAWFORD AND ASHBY.

Submitted January 27, 1910.   Decided April 4, 1911.

1. BILLS AND NOTES—*Recital of Consideration—Negotiability.*
   A recital of the consideration in a note, otherwise negotiable in form, does not render it non-negotiable. (p. 113).
   69 W. Va.

2. SAME—*Transfer—Bona Fide Purchaser—Equities.*

The rights of a *bona fide* assignee of such a note, in due course, are not affected by the equities of the maker. (p. 113).

3. SAME—*Transfer—Notice to Transferee.*

Knowledge by an assignee, in due course, of a negotiable note, that it was given for the purchase price of a specified quantity of land at a specified price per acre, is not notice to him of failure of title or shortage in quantity. (p. 113).

4. SAME—*Payee—Designation—Descriptio Personae.*

The use of the word *trustee* following the name of the payee in a negotiable note does not destroy its negotiability if the trustee has the right to sell it and receive the proceeds; its only effect is to put the purchaser upon notice concerning the trustee's title and authority in respect to the note. (p. 115).

5. SAME—*Bona Fide Purchasers—Transfer Without Recourse.*

The fact that a note is assigned without recourse casts no suspicion upon the holder's title. (p. 115).

6. SAME—*Defenses—Failure of Consideration.*

Whenever failure of consideration is a proper defense in an action of *assumpsit* upon a negotiable note, it need not be specially pleaded, but may be proven under the general issue. (p. 116).

7. PAYMENT—*Partial Payment—Application to Principal and Interest.*

The holder of a note has the right to apply a partial payment received thereon, first to a discharge of the interest then due, and the balance, if any, to the payment of the principal *pro tanto.* A memorandum made by him on the note, at the time of receiving the partial payment, "Endorsement on principal," followed by the amount received, does not estop him from afterwards applying enough of the payment to discharge the interest then due. (p. 117).

(BRANNON, JUDGE, absent.)

Error to Circuit Court, Kanawha County.

Action by the Dollar Savings & Trust Company against E. T. Crawford and another. Judgment for plaintiff, and defendants bring error.

*Linn & Byrne* and *Brown, Jackson & Knight,* for plaintiffs in error.

*Price, Smith, Spilman & Clay,* for defendant in error.

WILLIAMS, PRESIDENT:

Plaintiff recovered a judgment against E. T. Crawford and W. L. Ashby in the circuit court of Kanawha county on the 20th day of March, 1909, for the sum of $15,411.08, in an action of *assumpsit* upon a promissory note executed by defendants to Howard Hazlett, trustee, and by him endorsed to plaintiff. To this judgment a writ of error and *supersedeas* was awarded. Defendants pleaded the general issue, partial payment, and also filed a special plea setting up failure of consideration. The court sustained plaintiff's demurrer to the special plea; and on the issues joined on the remaining pleas, after hearing the evidence, directed a verdict for plaintiff.

The case has been very carefully briefed, and the points of law relied on are elaborately and ably argued by counsel on both sides. There is no dispute as to facts, and the questions of law are clear cut, and we have only to determine their applicability to the facts in the case.

The first assignment of error relates to the action of the court in sustaining the demurrer to the special plea. This plea alleged failure of consideration for the note. The note reads as follows:

"$35,021.                WHEELING, W. VA., April 16th, 1904.

Two years.... after date we promise to pay to the order of Howard Hazlette, Trustee, Thirty-five Thousand and Twenty-one 00—Dollars with interest from date until paid, at the rate of 6 per cent., per annum, in part payment for land.............. in Logan and Boone Counties, and upon which a lien has been reserved to secure this note, payable at the Nat'l. Exchange Bank, Wheeling, W. Va.                E. T. CRAWFORD,
                                                W. L. ASHBY."

The following endorsements appear on the back of the note, viz:

"This note does not begin to bear interest until May 20, 1904.
                                        HOWARD HAZLETTE,
                                                Trustee."

"WHEELING, W. VA., April 29, 1905, for value received, assigned and transferred to the Dollars Savings & Trust Co., of Wheeling, without recourse.          HOWARD HAZLETTE,
                                                Trustee.'

"Balance due on principal $13,030.90.

"Endorsement of principal, May 7, 1906, $26,000.00."

The special plea avers that the note was executed as part of the purchase price for an undivided one-half interest in 30,018 acres of land purchased of Howard Hazlett, trustee, in Logan and Boone counties, at the price of $7.00 per acre; that after defendants' purchase of the land they caused a survey of it to be made and ascertained that it contained only 27,545.41 acres, thus making a shortage in quantity of 2,472.59 acres; that by virtue of this shortage they were entitled to set off against the note, as of May 20, 1904, the time said note began to bear interest, the sum of $8,654.06, that being a sum representing one-half the shortage at $7.00 an acre. The contract of sale by Hazlett, trustee, and D. F. Frazee, trustee, to Crawford and Ashby, dated February 20, 1904, and also the deed from Hazlett, trustee, dated April 16, 1904, which conveys to Crawford and Ashby the undivided half interest in said land and which was made pursuant to the contract of sale, are made exhibits with the plea. The plea also contains the following additional averments: "And these defendants further show that the said note was afterwards assigned by said Hazlett, trustee, to the plaintiff without recourse, and with full notice to the plaintiff of the consideration and conditions of said note, and that the said plaintiff at the time of said assignment and transfer had notice that said note was given pursuant to contract, and deed for land at $7.00 per acre, and was subject thereto and contingent upon the acreage aforesaid, passed by said deed, being equal to 30,018 acres, and that these defendants had full right to set off against said note $3.50 per acre, for each acre, said tract was short of, or less than 30,018 acres."

It is stubbornly urged by counsel for defendants that the recital in the note that it was "in part payment for land in Logan and Boone counties, and upon which a lien has been reserved to secure this note," was sufficient to put plaintiff upon inquiry which, if pursued, would have led to a discovery of defendants' equities. But the plea does not allege that plaintiff actually knew, when the note was assigned to it, that the consideration had in part failed, nor does it allege that anyone knew, at that time, that there was a shortage. The demurrer admits

the truth of the averments, but they are not sufficient to charge plaintiff with notice, or to put it upon inquiry respecting defendants' equities against Hazlett, trustee. Plaintiff knew that the note was given in part payment for land, the note so informed it; and grant that it knew all the facts which the plea alleges it knew, and also that it knew all the facts that would be disclosed by a reading of both the contract and the deed exhibited with the plea, still they are not sufficient to disclose that there was a shortage in the quantity of land. The contract is not for a supposed, or estimated, quantity of land, subject to be corrected, or modified, by future survey; but it was made for the sale of a definite quantity, a specified number of acres. Is it not reasonable, then, to presume that the contracting parties had satisfied themselves concerning the quantity of land, before making the contract and the deed? Does the recital in the contract and deed, that the land contains 30,018 acres, convey any notice that there is a shortage? Certainly not; it is rather an assurance that it does contain the quantity than that it does not. The plea does not aver that any one, not excepting defendants themselves, knew when the note was assigned to plaintiff that there was a shortage. Therefore, so far as it appears from the plea and its exhibits, there is nothing to indicate that plaintiff knew, or could have ascertained by any amount of diligent inquiry short of having an actual survey made of the land, that there was, or would be, a shortage.

Unless the note is rendered non-negotiable either by the recital of the consideration, or by the fact that it is payable to, and assigned by, Hazlett in the capacity of trustee, and the defence of equities thereby let in, there is nothing in the plea or its exhibits which is sufficient to affect plaintiff with such notice as to let them in.

The note is payable at the National Exchange Bank, and is negotiable in form. The recital of the consideration for which it was given does not render it non-negotiable, neither does it put plaintiff upon notice of defendant's equities, there being nothing to indicate a failure of the consideration, either in whole or in part. The equities between the makers and the payee are secret, or latent, and there is nothing to affect the assignee with notice of their existence. A negotiable note reciting that it is for the purchase price of a horse, a house or lands,

does not render it uncertain, and is no notice whatever to the assignee that the payee's title to the property will fail. 1 Daniel on Neg. Inst., sec. 797; 7 Cyc. 947.

In fact we know of but one court which has taken a different view, and that is the supreme court of North Carolina, in the case of *Howard* v. *Kimball,* 65 N. C. 175. But that decision has been criticised by text writers, and seems to be generally regarded as unsound; it is not followed by other courts. Daniel, in his excellent work on Negotiable Instruments, Vol. 1, sec. 797, says: "The mere statement of the consideration in a bill or note does not put the holder upon inquiry whether or not it really passed, or has failed in any respect. It is rather assuring than otherwise, for it is evidence, if the note be genuine, that it was given for value; and the specification of what value can no more challenge the holder's investigation than the omission of such specification. In legal effect it does not qualify the paper in any manner." The true rule applicable in the case of an endorsee who has acquired the paper in regular course, and the maker of a note, as to the effect to be given to a recital of the consideration, is briefly stated in 7 Cyc. 947, as follows: "If the purchaser knows at the time of his purchase that the consideration for which the note was given has failed, if he is informed that the validity of the consideration is a question yet to be tested, or if he knows or has legal constructive notice that the consideration is illegal, he cannot be considered a *bona fide* holder. But a failure of the consideration in whole or in part after a *bona fide* transfer does not affect the character of the purchaser, although he had full knowledge of the original consideration for which the note was given." See also 4 A. & E. E. L. 305.

Counsel for defendants cite *Studebaker Mfg. Co.* v. *Dickson,* 70 Mo. 272. But that case differs materially from the case in hand. As in this case, that was an action brought by the assignee of negotiable paper, and the defense was failure of consideration. But in that case it appears that before the note was assigned the endorsee received the following telegram from the maker: "The note mentioned will be good if the consideration for which it was given has not been misrepresented, this has not been tested yet." The court there properly held that. "The plaintiff thereby became chargeable with notice that the validity of the note was a question which remained to be

tested, and if it was procured by fraud or by misrepresentations he could not enforce it." But in the case which we are reviewing nothing appears which was sufficient to arouse the least suspicion of a failure of consideration; and, consequently, nothing which would call for an investigation. Furthermore, it is not made to appear that, if an investigation had been made at the time the note was assigned, it would have led to a discovery that a shortage existed in the land. It required a survey of the land to ascertain this. Whether the survey was made before, or after, the note was assigned to plaintiff the plea does not aver. Nothing appears in the pleadings, or in the evidence, to indicate that anyone knew at the time the note was transferred that there was an actual shortage.

The fact that the note was made payable to Hazlett in the capacity of trustee, and that it was so assigned by him, does not affect its negotiability, nor oblige the purchaser to inquire into the matter of its consideration. According to nearly all the authorities, the most that could be required of the purchaser, in such case, is the exercise of proper diligence to ascertain the authority of the trustee to sell the note and to receive the proceeds. Further than this, we do not see that its negotiability is affected by its being made payable to a trustee. Hazlett's authority to dispose of the note is not questioned. Perry on Trusts, section 225. Such words as trustee, agent, executor, etc., are generally held to be merely *descriptio personae.* 1 Daniel on Neg. Inst., secs. 271 and 301; 7 Cyc. 563, and numerous cases cited in note. In *Fox* v. *Bank* (Tenn.) 35 L. R. A. 678, it is held: "The addition of the word 'trustee' to the name of the payee of a note, does not destroy its negotiability." *Bank* v. *Spurlin* (Ia.) 82 Am. St. Rep. 511; 49 L. R. A. 661.

*Bank* v. *Lange,* 51 Md. 138, is the only authority to which our attention has been called which holds a contrary doctrine. But that case seems to stand by itself, as does the case of *Howard* v. *Kimball, supra,* from North Carolina, which holds the converse of the other proposition, above discussed, that the recital of the consideration in a negotiable note is not notice to the assignee, in due course, of original equities.

*Hazeltine* v. *Keenan,* 54 W. Va. 600, does not decide the question of negotiability. It goes no further than to hold that the designation of the payee as *attorney,* is sufficient to put the

purchaser on notice that other persons were interested in the fund, and to put him upon inquiry respecting the right of the payee to sell the note. This is in line with the majority of adjudicated cases. The effect of such holding is, no doubt, to restrict, in a measure, the free circulation of such commercial paper, but we do not understand that it is thereby rendered non-negotiable. It does not follow that, because a note is made payable to a person as trustee, it is not of the class known as negotiable paper. The rights of the assignee, in due course, of such a note depend upon the authority of the trustee to sell it and to receive the proceeds. If he have such authority the note is negotiable, otherwise it is not. Because, having no right to sell, he can confer no title on his assignee. We do not think any of the authorities, outside of the court of Maryland in *Bank v. Lange, supra,* go further than to hold, that the use of words which show the fiduciary character of the payee, puts the purchaser upon inquiry respecting the payee's right to sell. 1 Daniel on Neg. Inst., sec. 795a; *Fox v. Bank* (Tenn.) 35 L. R. A. 678. In a foot note, the annotator says: "The little authority there is on this question is almost unanimous in support of the rule adopted in *Fox* v. *Citizens' Bank & Trust Co.* The exception is the Maryland case of *Third Nat. Bank* v. *Lange,* 51 Md. 138, 34 Am. Rep. 304, which held that a note given to a person as trustee is not negotiable." *Davis.*v. *Garr,* 6 N. Y. 124, 55 Am. Dec. 387; *Downer* v. *Read,* 17 Minn. 493; *Bush* v. *Peckard,* 3 Harr. (Del.) 385; *Westmoreland* v. *Foster,* 60 Ala. 448; *Chadsel* v. *McCreery,* 27 Ill. 253; *Pierce* v. *Robie,* 39 Me. 205.

But Hazlett's right to sell the note is not questioned, hence, the word *trustee,* following his name, is only *descriptio personae,* and does not in any sense affect plaintiff's title, or put it upon inquiry as to equities. The fact that the note was assigned without recourse casts no suspicion upon plaintiff's title. 4 A. & E. E. L. (2nd Ed.) 276.

There was no error committed in sustaining the demurrer to defendants' special plea; it avers no matter that is a defense to plaintiff's action. But even if the defense of failure of consideration could have been made, it would have been proper to prove it under general issue of *non-assumpsit.* 4 Cyc. 355; 4 Min. Inst. (3rd Ed.) 770; *Morgantown Bank* v. *Foster,* 35 W. Va. 357; *Blessing* v. *Miller,* 102 Pa. St. 45; *Dawes & Co.* v.

*Peebles' Sons,* 6 Fed. 856; 2 Greenl. on Ev. (16th Ed.) sec. 135; *Mason* v. *Eldred,* 6 Wall. 231; *Craig* v. *Missouri,* 4 Peters 410, opinion by Marshall, C. J.

Mr. Peterson, president of the Dollar Savings & Trust Company, testified that he advised with Joseph Speidel and Henry M. Russell, members of the executive committee for the bank, in regard to purchasing the note; that he was advised by them that the note was good; that Mr. Russell told him that the note was negotiable in form, and that he (Russell) knew that two other notes which had been given for the purchase money on the land had been paid. It is argued in brief, but upon what evidence we do not know, unless it be upon the evidence of Mr. Peterson as to what Mr. Russell told him, that Mr. Russell and Mr. Speidel were interested in the proceeds of the note, and that the land deal was in fact by the bank itself under cover of the trust. There is no evidence to support such theory. Mr. Peterson was asked the question whether Mr. Hazlett was not acting as trustee in the transaction for Henry M. Russell, Joseph Speidel and others, and he replied that he did not know, that he made no inquiry of Mr. Hazlett. But if it had been proven that Russell and Speidel were interested in the land deal, that fact could not affect the rights of the bank, even if the advice of Russell had been given in bad faith, as to which there is not the slightest evidence. If a director have knowledge of the matter which affects the bank's interest, but which it is to his interest to conceal, it is not notice to the bank. *Bank* v. *Oil & Coal Co.,* 66 W. Va. 505.

There was paid on the note, on May 7, 1906, $26,000.00, and the following memorandum was endorsed on it: "Balance due on principal $13,030.90. Endorsement of principal, May 7, 1906, $26,000.00." It is insisted that this establishes an election by the bank to apply the payment to the principal, rather than to the interest then due, and that it is bound by such election. We do not think so. Mr. Peterson, who is the only witness for either party, testified that the memorandum was in the handwriting of the note clerk, and that, in point of fact, the money had been applied on interest and principal. Plaintiff evidently had a right to so apply it. It was not bound by the memorandum made on the note by its clerk. Moreover, there was only one debt to which the payment could be applied, and, consequently, there

'was no occasion for election. *Donally* v. *Wilson,* 5 Leigh 329; *Smith* v. *Lawson,* 18 W. Va., opinion by Judge Green, page 242. There was no agreement as to how the payment should be applied, and plaintiff had a right to apply enough of it to discharge the interest then due, and the balance to reduce the principal.

The law and the evidence was with the plaintiff, and there was no error in the court's instruction to the jury to find for it, and no error in refusing to set the verdict aside. The judgment will be affirmed.

*Affirmed.*