## EDGAR ZIELIAN *vs.* BALTIMORE PLANT ICE COMPANY.

*Orders directing bringing of money into Court. Receivers; certificates of; unauthorized issue; duties and liabilities.*

An order directing money to be brought. into Court and paid out under the Court's direction, is an order in the nature of a final decree, and should not be passed except under such proof and finding as would be conclusive to establish the party's liability, and that the money is due and payable by the party directed to bring it into Court.                p. 663

The receiver of a corporation issued receiver's certificates without authority; on appeal from the order directing him to bring into Court the amount of money to pay off the certificates so issued by him, it was *held,* that there was no evidence to justify the decree and that there should have been further proceedings to give the receiver an opportunity to make defence.                p. 665

The money realized from the certificates was not an asset of the corporation, but was to be asserted by purchasers of the certificates in an action at law.                p. 665

The order creates a preference over the other creditors who had purchased other such certificates.                p. 665

Where a receiver in his dealings with the corporation had been charged on the books of the company with checks drawn by him, it is error for the auditor to charge him with them again.                p. 666

Where a receiver of a corporation issued certain unauthorized certificates signed as *Receiver,* and endorsed them in his own name personally, it was *held,* that the purchasers took the certificates with constructive notice of the receiver's want of authority and that the corporation was not liable therefor.

p. 667

When the money raised on the unauthorized certificates was used on the company's plant and machinery, or placed in its treasury, the receiver should be credited therewith.    p. 667

*Decided April 19, 1911.*

Four appeals from the Circuit Court No. 2 of Baltimore City (NILES, J.).

The four cases were argued together before BOYD, C. J., BRISCOE, PEARCE, THOMAS, PATTISON and URNER, JJ.

*George P. Bagby* and *Edwin G. Baetjer,* for Appellant.

*W. Burns Trundle* and *Leigh Bonsal,* for Appellee.

JUDGE BRISCOE delivered the opinion of the Court.

There are four appeals, in the record before us, and they are from separate decrees of Circuit Court No. 2 of Baltimore City in Equity.

The controversy grows out of the liquidation of the affairs of the Baltimore Plate Ice Company, a New Jersey corporation, with its place of business in Baltimore City, and now in the hands of receivers.

While there are four appeals taken from separate decrees or orders of the Court below, it is conceded, that they practically present but two controversies and these will be considered as on two appeals.

The appeals were entered upon the same day, but the first in number appearing upon the record is an appeal from the decree of July 20, 1910, overruling the exceptions of the appellant to, and ratifying the auditors' account stated, passed on the petition of the Fairbanks Company, a corporation of the State of New Jersey, requiring the appellant, receiver, to bring into Court within fifteen days the sum of $7,650, with interest, being the amount of certain notes

issued by him as such receiver, to the Fairbanks Company, in excess of his authority, and in default thereof, authorizing and permitting the bonds of the receiver to be put in suit for the recovery of the amount of the notes.

The second appeal is from a decree, passed on the fifth day of August, 1910, making final the decree of the 20th day of July, 1910, and directing the bonds of the receiver to be put in suit.

The two remaining appeals are from decrees of the Court below, passed on the 20th day of July, 1910, and on the 5th day of August, 1910, overruling the appellant's exceptions to and ratifying the auditor's account requiring the receiver to bring into Court the sum of $3,942.52, with interest, within fifteen days, the amount being alleged funds of the Plate Ice Company, stated to have been wrongfully converted by him to his own use, also removing him as such receiver, depriving him of commissions and directing, in default, the bonds to be put in suit.

The decree of August 5th, 1910, made final the order of July 20th, 1910, also removed the appellant, as receiver, denied him all commissions and compensation and directed the co-receivers to put the bonds in suit.

The facts as they appear from the record relate to both appeals and will be now briefly stated, for a proper understanding of the questions involved on the appeals and will be disposed of separately.

On the 25th day of March, 1908, the appellant upon application of certain creditors was appointed sole receiver of the Baltimore Plate Ice Company, and duly qualified as such. The decree did not provide for a dissolution of the corporation nor for the sale of its property, but the power of the receiver seems to have been limited to the preservation of the property of the corporation and to making it a productive and profitable business plant.

The assets of the corporation consisted of a leasehold interest in certain property known as Nos. 7, 9, 11 and 13 Frederick street, Baltimore, upon which had been erected an ice

factory and a machine building for the manufacture of ice, at a cost of thirty-five thousand dollars.    There was outstanding and issued at this date $24,000 of bonds, and its unsecured debts amounted to about $9,450.00.

On July 16, 1908, the receiver was authorized by an order of Court (all of the bondholders and creditors consenting) to issue receivers' certificates and notes to complete the ice plant.    In pursuance of this order receivers certificates to the amount of $30,000.00 were issued and sold to complete the building and make the first payment on machinery and these were made a first lien on the assets of the company.    Receivers' notes to the amount of $26,300 were also issued to the manufacturers in payment for machinery, and these notes were made a second lien on the assets.    There was also issued by the receiver, in excess of his authority and not covered by the Court's order, receivers' notes (to be hereafter designated receivers' notes, not authorized) to the amount of $17,406.66.    The notes held by the Fairbanks Company and here in dispute are admitted to be a part of the notes, so issued, in excess.

On the 2nd day of September, 1909, upon the petition of certain creditors of the Ice Company, Messrs. John P. O'Farrall, W. Burns Trundle and Leigh Bosnal, members of the Baltimore Bar, were appointed co-receivers, with the appellant.

On the 31st of July, 1909, the appellant receiver, filed the following report, showing the status of the affairs of the company and his administration of the office.

OUTSTANDING OBLIGATIONS.

1. Receiver's certificates...........................$30,000.00
2. Receiver's notes.............................. 25,341.13
3. Bills payable.................................. 18,445.53
4. Edgar Zielian................................. 14,028.59
5. Accts. payable................................ 9,442.65
6. Ice account................................... 3,686.59
7. Cash......................................... 330,17

                                    $101,274.66

### DISBURSEMENTS.

| | |
|---|---:|
| Plant, machinery, buildings, etc. | $86,698.43 |
| Furniture | 486.05 |
| Tools and fixtures | 86.61 |
| Pay roll, telephone, rents, expenses, etc. | 7,885.07 |
| Interest and exchange | 579.90 |
| Commission for sale of Rec. Cert., etc. | 1,345.00 |
| Coal | 970.08 |
| Oils | 298.97 |
| Insurance | 604.00 |
| Ground rent | 1,125.00 |
| | $100,079.11 |
| Accounts receivable | 1,195.55 |
| | $101,274.66 |

It also appears that on the 12th of November, 1909, the receivers sold all the property of the company for $34,-500.00, and there remained for distribution the sum of $21,-504.00, to be paid on account of the authorized receivers' certificates, being the first lien upon the company's assets.

On the 15th of November, 1909, on petition of the Fairbanks Company, a creditor of the Ice Company, and holding $7,650.00 of the unauthorized and overissued receivers' notes, the Court below directed the receiver to bring into Court the sum of $7,650.00, to be paid the petitioner and that the receiver bonds be put in suit.

This brings us to a consideration of the questions raised on the appeals, from the decrees of the 20th of July and August 5, 1910, relating to the Fairbanks Company's claim, being the amount of the notes held by them and which the auditor found were included in the unauthorized overissue of notes.

Practically, the only question before the auditor was the fact whether the notes formed a part of the unauthorized issue. By the order of the 3rd day of December, 1909, the papers were referred to the auditor "to state an account,

of all notes issued by the receiver in excess of the authority conferred by the orders of Court, and showing whether or not the receivers' notes held by the Fairbanks Company were included in the unauthorized overissue.  The report of the auditor on May 2nd, 1910, shows that he was unable to ascertain the total overissue, but that the Fairbanks notes were a part of them.  The Court in its decrees here appealed against not only ratified the auditor's report as to the finding of the overissue, but it made this report a basis for the order, directing the receiver to bring the amount of the Fairbanks notes into Court to be paid to that company and directed the bonds of the receiver to be put in suit.  In other words, the Court held that because the auditor found that these notes were overissues, that the finding of this fact was a sufficient reason and ground for directing the money to be brought into Court, and to be paid to the holder of these notes.

There was error, we think, in all three of the directions of this decree, because, it is well settled that an order of this character is in the nature of a final judgment and decree, and it will not be passed except upon such proofs and findings as will conclusively establish the party's liability and that the money is due and payable by the party directed to bring it into Court.

In *Dillon* v. *Connecticut Ins. Co.,* 44 Md. 396, it is said, though the practice of ordering money into Court has become one of the most ordinary methods by which the Court enforces its jurisdiction of preserving property in dispute pending a litigation, there are certain well defined restrictions and limitations upon it which Courts of Equity should always be careful to observe.  These limitations are well stated in the cases in our own State.  *Daniel Ch. Pr.* Ch. 41, section 1; *Contee* v. *Dawson,* 2 Bland, 270.  In *Hopkins* v. *McElderry,* 4 Md. Ch. 9, the Chancellor said, the facts upon which the party relies must be found in the case either admitted or so established as to be open to no further controversy at any subsequent stage of the proceedings, and in

concluding the opinion, held that at all events it is certainly not now in the power of the Court to say that the fact that the defendant owes this precise sum is so conclusively established as to be open to no further controversy at any stage of the controversy.

In *McKim* v. *Thompson,* 1 Bland, 155, the Chancellor, in dealing with this subject said: "It is held to be a fundamental axiom that the judgment of a Court must be the conclusion of law arising from the facts presented to it. And in the application of this maxim, there is nothing peculiar in the character of the Court, or in the mode of judicial proceedings by which it can be at all affected or varied. It is a fundamental principle applicable to all Courts, and from which none are allowed to depart. The judgment of a Court of law is the legal result of the facts admitted by the parties, or found by the jury; and so, too, the decree of a Court of Chancery is the result, according to principles of equity, arising from the facts found in the bill, answer, proceedings and proofs. Such is the acknowledged foundation of all final and general judgments or decrees. But interlocutory orders and decrees affecting rights, must, so far as they go, have a similar basis; because, no Court of Judicature can arbitrarily make a partial, any more than a total disposition of the rights of things or persons, without such a foundation. The judge can go no farther than to apply the rule to the case, or to pronounce the law upon the facts, either partially or wholly. It is of the very nature of judicial power to be so limited. It is, however, of no importance, as regards this principle, how the facts are made to appear, or in what shape they are presented to the tribunal; whether by confession, by arithmetical calculation, by necessary deduction, or by positive and direct proof. It is enough that the facts are so placed before the tribunal as to preclude all further denial of them. The Court may then be called on, in cases like this, to pass an order, or in other words, to pronounce the equity resulting from the facts."

We shall not undertake to recapitulate the facts, nor to answer the various contentions of the parties to the record, in this case, because we are clearly of the opinion that the decrees upon this state of the record were not properly passed.

There was no proper foundation to justify the final decree directing the money 'to be paid to the Fairbanks Company, or to warrant the conclusion of the liability of the receiver to this company. The fact that these notes were unauthorized did not justify a decree or judgment for the amount of the notes, in favor of the Fairbanks Company under the facts of the case. It was not conclusive as to his liability without further proceedings, and without an opportunity to defend, and this liability was clearly denied by the answer. The claim was not an asset of the trust estate for distribution by the receivers, but a claim to be asserted in an action at law by the Fairbanks Company if such right existed.

The record shows the assets of the company for distribution to claimants amounted to about $21,504, while the receivers' certificates outstanding which constitute a first lien amount to $30,000.

Besides this, there are other holders of unauthorized notes, in the same position as the Fairbanks Company, and the order of Court constituted a preference over the other creditors in the identical situation.

The question of the measure of damages and the liability of a person acting in a representative capacity for an unauthorized act is settled in this State and elsewhere. *Brommel* v. *Rayner,* 68 Md. 47; *Lane, Adm'x,* v. *Lantz,* 27 Md. 212; *Fairbanks* v. *Humphries,* 18 Q. B. Div. 54; *Simmons* v. *Patchett,* 7 El. & Bl. 570; *Cyc.* Vol. 34, page 303.

The next inquiry relates to the appeals from the decrees directing the receiver to bring into Court the sum of $3,942.52, alleged to be the funds of the receivership misappropriated by him. It is admitted there is a balance, an overdraft of about $800, due by the receiver to the trust

estate, for funds unaccounted for, but it is insisted that the principle adopted and the method by which the liability of the receiver was ascertained in the case was improper and erroneous.

It will be seen that the books and accounts of the receiver were kept by an accountant appointed by the Court, and they appear to be in proper balance. The record shows that the account contains an entry of all amounts advanced by the receiver to the trust estate and the repayment of those amounts by him. A separate account was kept on the books, marked Edgar Zielian, and it shows the transactions of the receiver with the company in this regard.

The basis of the co-receiver's claim is that the receiver has overdrawn this personal account, and the auditor so found, to the extent of the amount stated in the decree, and it was directed to be brought into Court.

The first question presented here is whether the receiver shall be held accountable for certain checks drawn by him as such receiver and payable to his own order or to the order of his individual creditors. While his liability in this respect is not denied, it appears that these checks were charged in the ledger to his personal account, and the effect of the auditors again charging them was to charge him twice with the same payments. The record shows that the money was charged to his personal account, and this having been done it was error in the auditor to have charged them a second time.

As to the error of a cash balance of $330.17 charged against the receiver there seems to be but little doubt. The ledger shows that this was an overdraft and not a cash balance on hand, and was charged as a liability of the receiver with bills payable, etc.

The remaining question is, whether the $14,800 loaned by Hopper and others to the receiver constituted a proper credit to the receiver's personal account, and this depends largely upon whether the money belonged to the company or was raised upon obligations for which the company is liable. It is not claimed that the money was taken from the funds

of the company, and it is difficult to see, under the facts of this case, upon what ground the company can be held liable, upon the unauthorized notes that were issued by the receiver, upon which the money was raised. The notes were signed Edgar Zielian, Receiver, and were endorsed by him personally. The purchaser of these receiver's notes took them with constructive notice of the receiver's want of authority to issue them and the company is not liable on the notes. The money went into the company's treasury and plant, and the receiver has a right to a credit therefor. *Nat. Bank* v. *Lange,* 51 Md. 144; *Marbury* v. *Ehlen,* 72 Md. 216; *Gable* v. *Cheston,* 51 Md. 382.

We find no error in that part of the order removing the appellant as receiver and denying him commissions, and it will be affirmed in this respect.

It follows for the reasons stated that the decrees of the 20th of July, 1910, and of the 5th of August, 1910, *In re* The Fairbanks Company, will be reversed. The decrees of the 20th of July, 1910, and of August 5th, 1910, *in re* the petition of the co-receivers, will be affirmed in part and reversed in part, and the cause remanded for a new accounting, with costs.

> *Decrees of the 20th of July, 1910, and of August 5th, 1910, in re Fairbanks Company's claim, reversed. The decrees in re co-receiver's claim, affirmed in part and reversed in part, and cause remanded for new accounting, with costs to the appellant on all four appeals.*