YORK MANUFACTURING COMPANY *vs.* HOBLIT-
ZELL NATIONAL BANK ᴇᴛ ᴀʟs. JOSEPH L.
SWEIGERT AND COMPANY *vs.* HOBLIT-
ZELL NATIONAL BANK ᴇᴛ ᴀʟs. CUR-
TIS AND COMPANY *vs.* HOBLITZELL
NATIONAL BANK ᴇᴛ ᴀʟs. BUF-
FALO MANUFACTURING COM-
PANY *vs.* HOBLITZELL NA-
TIONAL BANK ᴇᴛ ᴀʟs.

*Receivers' certificates: duty and liability of parties accepting—;
fraud of receivers; acquiescence.*

To give to parties who deal with a receiver, without the sanction
of the Court, priority over those who deal with him in the
manner the Court expressly authorizes, is inequitable.    p. 509

One who contracts for the sale of materials to a receiver, and
delivers them without the sanction or the authority of the
Court, does not acquire any preference over other creditors
who hold receivers' certificates issued under the sanction of
the Court, and which were made a lien on the assets of the
insolvent corporation.                                     p. 510

If a receiver by fraud induces third persons to deliver property
to him without paying therefor, such parties, upon proper
application to the Court, may obtain relief; but if they allow
the property to be incorporated with the plant of an insolvent
corporation, and take unauthorized notes, etc., for the prop-
erty, they can gain no preference over the first lien creditors,
or those who hold receivers' certificates, etc.            p. 510

Parties dealing with a receiver are presumed to know the nature
and extent of his limitations.                             p. 512

A party defrauded has the option of acquiescing in the agree-
ment or of avoiding it; but if he chooses to avoid it, he must
manifest his determination within a reasonable time after the
discovery of the fraud.                                    p. 512

*Decided July 10th, 1912.*

Four appeals from Circuit Court No. 2 of Baltimore City (STUMP, J.).

The facts are stated in the opinion of the Court.

The four appeals were argued together before BOYD, C. J., BRISCOE. BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Frank Gosnell* (with whom was *George Weems Williams* on the brief), for the York Manufacturing Company.

*W. Ewin Bonn* (with whom was *Ed. C. Carrington, Jr.,* on the brief), for the Hoblitzell National Bank.

*G. H. H. Emory* (with a brief by *C. Howard Millikin* and *Emory & Soper*), for Sweigert and Company, Curtis and Company and Buffalo Manufacturing Company.

*Clarence A. Tucker* (with a brief by *Wm. J. Garrett* and *Harman, Knapp, Ulman and Tucker*), for E. J. Codd and Company.

*John L. G. Lee* (with whom was *P. L. Hopper* on the brief), for the Atlantic Ice Co.

BRISCOE, J., delivered the opinion of the Court.

There are four appeals in this record from an order of Circuit Court No. 2 of Baltimore City overruling exceptions to the final ratification of the auditor's distribution account "B" filed in the case, and finally ratifying said account. As the claims of the respective appellants involve substantially the same questions and were argued together, it will be unnecessary to file separate opinions.

On the 25th of March, 1908, Edgar Zielian was appointed receiver of the Baltimore Plate Ice Company. That company had executed a mortgage to secure an issue of $125,-000.00 of first mortgage bonds, and, as will be seen by refer-

ence to the case of *Zielian* v. *Baltimore Plate Ice Co.*, 115 Md. 658, it was supposed that there were only $24,000.00 of those bonds outstanding. On July 16, 1908, the Court passed an order authorizing Zielian to issue receiver's certificates to the extent of $30,000.00 as a first lien upon all the property, assets and machinery of the company, and by order of November 18th, 1908, he was authorized to issue receiver's notes to the extent of $26,300.00, which were to be a second lien on that property and machinery. Those orders were passed with the consent of what was supposed to be all of the bondholders and creditors of the company, but it has since developed that some other bonds were outsanding which were held by parties not shown to have given their consent to the receiver's certificates and notes. The auditor distributed to a bond held by the Aldine Manufacturing Company, amounting with interest to $1,145.00, and to bonds held by the Hoblitzell National Bank amounting with interest to $8,550.00—allowing a dividend to each of them of a fraction over 69 per cent. The dividends to the bondholders only left a net balance in the hands of the receivers for distribution of $12,359.18.

The receiver, Zielian, issued more than the $30,000.00 of receiver's certificates and more notes than the $26,300.00 authorized by the Court. On the 2nd of September, 1909, Messrs. O'Farrall, Trundle and Bonsal were at the instance of creditors appointed co-receivers. On the 11th of November, 1909, the receivers sold all the property of the company for $34,500.00, and these appellants filed exceptions to the sale, claiming that they had furnished Zielian, who was then sole receiver, certain machinery, etc., which had gone into the plant and which they still owned and that the receivers should not have sold it. The exceptions resulted in agreements of the appellants with the receivers, which were ratified by orders of the Court, by which the receivers were authorized to withhold from the money in their hands the several sums named to represent the value and take the place of the machinery, etc., sold and delivered by the respective ap-

pellants to Zielian, and to pay over said sums to the respective parties should it be determined that but for the sale on the 11th day of November, 1909, they would have been entitled either to a return of the machinery, etc., or be paid the amounts shown to be due them. The orders were of course subject to the rights of creditors to dispute the claims. The exceptions to the sale filed by the appellants were then dismissed, in accordance with the terms of the agreements above referred to.

It is conceded—at least not denied—that the Hoblitzell National Bank and the Aldine Manufacturing Company were entitled to have distributions on the bonds held by them, as they appeared to have been *bona fide* holders of them without being parties to or having notice of the agreement to permit the receivers certificates and notes to be issued and have priority over the bonds, secured by the mortgage, and it will not be necessary to discuss that question. As there is over $12,000.00 to be distributed and the claims of the four appellants amount to much less than that sum, they are really not specially interested in the distribution to those bonds, and there are no exceptions before us other than those of the four appellants. As the balance in hand for distribution only pays the holders of the receiver's certificates a little over 41 per cent. of their claims, those holders alone are the parties who are particularly interested, for their distributive shares would be reduced by the extent that the claims of the appellants, or either of them, might be allowed.

We are of the opinion that the lower Court was clearly right in overruling the exceptions of the appellants to the audit. It is to be regretted that parties dealing with a receiver should sustain losses on sales made to him, but as the records of the Court are open for the inspection of all parties having such dealings, the equities would be with those who acted in accordance with the authority of the Court, rather than with those who furnished machinery, materials, etc., in a way not authorized by the Court. The object in authorizing the receiver's certificates and notes was to enable the

receiver to purchase the necessary machinery, materials, etc., for the plant, and it would be very inequitable to give parties who chose to deal with the receiver without obtaining the sanction of the Court priority over those who dealt with him as the Court expressly authorized, and with the consent of those who were believed to be all of the existing creditors. We speak of the "receiver," in the singular, because the co-receivers had not been appointed when the dealings of the appellants took place.

The appellants contend that the Court should protect their claims because the sales were made to the receiver appointed by it, but it must be remembered that this is not a controversy between creditors of the company who became such before the receiver was appointed and those who sold to the receiver, but all of the claims to be affected by this distribution are held by parties who were dealing with the receiver. Even if there be any question about the right of the two bondholders above mentioned to have their claims paid, to reject them would not help the appellants, as there would not then be sufficient to pay the whole of the receiver's certificates in full. It is therefore not material to determine whether the mortgage lien attached to the property acquired by the receiver, and not by the company.

But the contention is also made that inasmuch as Zielian had exhausted the power given him by the Court to give notes for the purpose of buying machinery, etc., before he gave those to the appellants, he had no authority to purchase the property from them, and as the property of the appellants went into the plant, and to that extent enhanced its value, the Court should return to them the values of the property as fixed by the agreements above referred to. It is rather an unusual position for creditors to base their right to be paid in full out of an insolvent estate on the ground that the receiver had no power to make the contracts which he made with them—notwithstanding the fact that if the creditors had taken the trouble to inquire they could have ascertained exactly what powers had been conferred on him.

But it does not necessarily follow that the Court would not have allowed the claims of the appellants, and would not have authorized the receivers to pay them, if there had been any fund out of which they could have been paid. It is true that Zielian was only authorized to give receiver's certificates to the amount of $30,000.00 and notes amounting to $26,-300.00—the former to be a first and the latter a second lien—but if those amounts had been paid, and it could have been shown that the appellants' machinery and money went into the plant, and they were proper purchasers, the Court could doubtless have required payment for them out of any fund which could properly have been applied to them. The difficulty is that the receiver's certificates had been by the order of the Court made a first lien and the notes amounting to $26,300.00 a second lien, and until they are provided for these appellants have no standing to demand payment, unless, on the theory that they still had title to the property. There is therefore no special equity in their favor, unless they can establish that the title was still in them respectively.

All of the machinery, etc., claimed by these parties had become incorporated in the plant and no demand for any of it was made until after the sale by the receivers. If they delivered the property to Zielian on the understanding that it was to be paid for in cash, and he deceived them, and by fraud or misrepresentation or other improper conduct got their property without paying for it, they might have at once applied to the Court for relief, and if it had been satisfied that its receiver had perpetrated a fraud on them or was not entitled to hold the property, it could have directed it to be restored to them. They not only did not pursue that course, but they permitted the property to become incorporated in the plant, took the notes of the receiver, and so far as shown by the record acted as if the property had been regularly sold and delivered to him, until after the sale. They did not even take such notes as the Court had authorized the receiver to give, and yet now ask that they be paid in full to the further loss of those who were entitled

to a first lien on the plant, although the property of some of them, paid for in whole or part by receiver's certificates, was sold with the plant and doubtless, at more or less of a sacrifice, if we judge from the amount of the proceeds of sale as compared with the money put into the plant. If that can be allowed then it would be better for parties selling to receivers to sell on terms not authorized by the Court, rather than as the Court directs, and, although the property of such parties is permitted to go into the plant just as that of those who followed the terms of the Court's orders, if a failure comes, then demand a return of their property or payment in full. Such a course would not only lead to a very dangerous practice, but would be attended with disastrous results.

It was also contended that by the order of the Court authorizing Zielian to purchase the machinery, that the property so purchased was not to become the absolute property of the receiver until paid for as agreed upon, but we do not so construe the order relied on. It provided, "that the absolute title thereto shall pass to the said Edgar Zielian, receiver, unconditionally, upon the delivery by him of said receiver's notes and payment of such cash as may be determined." While it is true that it in terms provided that the title should pass upon the delivery of the notes and payment of cash, it did not say that the title should not pass unless such notes were given or cash paid. It surely was not intended to mean that if vendors chose not to demand the receiver's notes or payment in cash before delivery, or if they waived such rights as they might otherwise have had, to claim title to property sold to the receiver, they would not be subject to the rules of law which other vendors are ordinarily governed by if not limited by the Court's orders. The receiver was not given authority by that order to deliver any of the notes or to pay out the cash referred to in it unless the title did pass unconditionally, and if vendors delivered property without calling the attention of the Court to any such conduct or fraud of the receiver, the Court and

all parties interested might well have assumed that the vendors and the receivers were acting in accordance with the Court's orders. The vendors had every opportunity to know, and were presumed to know, what the receiver could or could not do.

The record is very meagre as to the circumstances under which the sales were made by the appellants, but it is shown that whatever the original understanding between them or any of them, and Zielian was, all of them afterwards accepted notes and so acted that they are now precluded from setting up priorities of their claims by reason of the alleged fraud or misrepresentation of Zielian. The York Manufacturing Co. accepted notes and renewals of them, as well as some partial payments. Joseph L. Sweigard and Co. shipped the goods in February, 1909, accepted notes in May, 1909, and on August 31st of that year filed a petition in Court to have a co-receiver appointed, but did not assert title to the property. The other two appellants also accepted notes, and without discussing the claims of any of them at length, we are of the opinion that neither of them is entitled to be paid out of this fund. It is well settled that "The party defrauded has the option of acquiescing in the agreement or of avoiding it, but if he elect the latter, he is bound to manifest his determination within a reasonable time after discovery of the fraud." *Clements* v. *Smith,* 9 Gill 156; *Dellone* v. *Hull,* 47 Md. 112; *Troup* v. *Appleman,* 52 Md. 456; *Cole* v. *Hines,* 81 Md. 476; *Latrobe* v. *Dietrich,* 114 Md. 8, and other cases in this State on the subject. In a case such as this, where parties dealing with the receiver had constructive if not actual notice of the limitations of his power, and where it was important that the Court be kept informed of any irregularities on the part of the receiver, they should at least be required to be prompt in making their election as to whether the contracts should be affirmed or rescinded, if they occupied positions which would have justified the Court in relieving them in case they elected to rescind.

So without further prolonging this opinion, we will affirm the order appealed from by each of the appellants. As each of the several appellees only had one brief, we will direct that one-fourth of the costs of them be taxed in each of the four cases.

> *Order was affirmed on the 13th day of June, 1912 (per curiam), the appellants in each of the cases to pay the costs of their respective cases, including one-fourth of the appellees' briefs.*